## American Life Insurance and Trust Company *versus* Rosenagle and Wife.

77 507
143 322

1. The stringency of the rule requiring search for documents and proof of their loss to admit evidence of their contents, is proportioned to their character and value.

2. Slight proof of such loss, &c., is sufficient where the documents from their nature would have only transitory interest and there was no rational motive for keeping them.

3. A deposition will not be rejected because the witness speaks of papers not produced, if it appear they were received a long time before the deposition was taken, and are such as would not probably be preserved for so long, or are not in the power of the witness or the party; especially if family letters, received by the witness in a foreign country.

4. The law of a foreign country on a given subject may be proved by any person, though not a lawyer, or not having filled a public office, who has been in a position to render it probable he would make himself acquainted with it.

5. A pastor of a church in a foreign country testified, that church records of marriages, births, &c., had been kept according to the laws of the country, and he was the proper custodian of them and received by him from his predecessor. *Held*, that extracts from the records giving the genealogy of a family, sworn by him to be correct, were evidence in a question of identity.

6. Where proof is by a copy, an examined copy duly made and sworn to by any competent witness, is always admissible.

7. Pedigree includes not only descent and relationship, but also the facts of birth, marriage and death, and the times these events happened.

8. Such facts may be established by general report in the family, proved by a surviving member of it, where they occur incidentally and in relation to pedigree.

9. Evidence in this case by foreign depositions and documents of pedigree, to prove identity.

March 9th 1875. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Luzerne county*: Of January Term 1874, No. 293.

This was an action of debt, brought July 26th 1867, by Valentine Rosenagle and Maria his wife, in her right, against the American Life Insurance and Trust Company. The action was on a policy of insurance, dated January 9th 1867, issued by the defendants to Maria Ann Rosenagle, on the life of Maria Catharine Kring, who died April 19th 1867.

The case was tried April 10th 1873, before Dana, J.

The plaintiff gave in evidence the policy, which was accompanied by interrogatories propounded by the company to the applicant, with their answers and the applicant's declaration.

The third interrogatory and its answer were: "Place and date of birth of the life proposed for insurance." Answer: "Born at Baden, Germany, on the 2d day of February 1807."

The answers were signed "Maria Catharine Kring by Maria Ann Rosenagle."

The declaration was:

"'I do hereby declare that the age of Mary Catharine Kring does not exceed sixty years; that she is now in good health, and does ordinarily enjoy good health, and in the foregoing proposal I have not withheld any material circumstance or information touching the past or present state of the health or habits of her life with which the American Life Insurance and Trust Company ought to be made acquainted.

"And I do hereby agree that this declaration, and the foregoing proposal, shall be the basis and conditions of the contract between myself and the said company; and that if any fraudulent or untrue allegation be contained herein, or in the proposal, all moneys which shall be paid on account of such insurance shall be forfeited to the said company, and the policy of insurance made on the faith of this declaration and proposal, shall become null, void, and of none effect.

"Dated at Scranton, Pa., this 9th day of January, A. D. 1867.
                MARIA KATHARINA KRING,
                        by MARIA ANNA ROSENAGLE."

"'I, Mary Ann Rosenagle, do declare that I have an interest in the life of the aforesaid Mary Katharine Kring to the full amount of the sum to be insured.' MARIA ANNA ROSENAGLE."

After giving evidence of the time and circumstances of Mrs. Kring's death, the plaintiff rested.

The defendant gave in evidence the deposition of Francis J. Debold, taken on commission, at Baden, Germany.

He stated that Mrs. Rosenagle was his cousin-German.

To the sixth interrogatory he said:

"I was acquainted with Maria Catharine Hermann. She was the sister of my mother. Firstly she was married to the master locksmith Kring, of Odenheim. From this marriage the daughter Mary Ann Rosenagle is descended. Mr. Kring, master locksmith, and his wife, were generally known at Odenheim as duly married, man and wife, and living in legal matrimony. I was acquainted personally with the daughter, Mary Ann Rosenagle, before she was married. She came into my house with Valentine Rosenagle, her bridegroom, then being. About the age of Maria Catharine Hermann, I cannot give any nearer information, nor about the time of her marrying."

To the first cross-interrogatory he said:

"As I said already, I was personally acquainted with Maria Catharine Hermann. I saw her for the last time at Odenheim, but cannot now say when it was."

To the second cross-interrogatory he said:

"I repeat that I was personally acquainted with Maria Catharine Hermann, [and by the letters which Rosenagle and his wife

addressed to me from Scranton, I came to know that she died in the said town. Rosenagle and his wife did write to me many times, but have not more their letters."]

The plaintiff objected to the part of the answer in brackets; it was rejected by the court and a bill of exceptions sealed.

They gave in evidence the deposition of Alexander Bauer, also taken at Baden on commission. He said he was Catholic dean and parson at Odenheim; he did not know either of the parties to the present suit.

The second interrogatory was:

"Are there any church or parish records kept, showing the births, baptisms, marriages and deaths in Odenheim, and by authority of what law are they kept? State particularly what law, when the law was enacted, and by what authority."

He answered: "There are kept at Odenheim, as well as in the whole Grand Duchy, church records, showing the births, baptismals, marriages and deaths.

"[They are now kept by authority of the Badish common law, established since the year 1810, and enacted by the Grand Duke then being, and of the edict of the 29th May 1811. Before this time they were kept according to the laws of the country then established."]

The plaintiff objected to the part of the answer in brackets; it was rejected by the court and a bill of exceptions sealed.

He proceeded:

"These records have already existed many centuries, and each parson receives the church books from his predecessor, which all together form one continued series. I am the proper keeper and custodian of said records. There are among these records indeed, records of the birth, baptism and marriage of Maria Catharine Hermann. The papers here produced contain a duly legalized extract thereof (No. 1 Exhibit).

"The record contains also the birth of the children of Joseph Hermann and his wife Elizabeth, born Riedel. I here produce an extract of the same (Exhibit No. 2)."

He said, also, that he did not know Maria Catharine Hermann, and did not know that she was the identical woman who died in Scranton, and whose life was insured by defendants.

Exhibit No. 1 was:

[Seal.]                                              [Stamp.]

"Extract. Page 254, § 48, Anno 1798.

"1. In the year of our Lord 1798, on the 17th day of the month October, I the undersigned, Joannes Bapt. Brennig, pastor, baptized an infant, born on the same day, about the fifth morning hour, of Joseph Hermann, citizen, and Elizabeth, born Riedel, lawful consorts of this parish, to which was given the name

Maria Cathrina. * * *    Therefore the undersigned, in their own hand, attest with me.    ·    JOSEPH HERMANN,

KARL ROMELE, School Teacher,

and I, JOANNES BAPT: BRENNIG,

Pastor to St. Michael, the Archangel, of the place Odenheim."

The defendants then offered in evidence Exhibit No. 2, viz. :

The consorts Joseph Hermann and Elizabeth, born Riedel, begot during their marriage the following children : Maria Franziska, born 21st April 1788; Franz Peter, born 20th October 1790; Franz Joseph, born 26th April 1793; Theresia, born 27th December 1795; Maria Kathrina, born 17th October 1798; Karl, born 12th June 1800; Johan Baptist, born 30th October 1805.

Transcribed from the book of births of the parish of Odenheim. Odenheim, the 17th September 1868.            BAUER, Pastor.

For the correctness of this transcript and the signature of the official pastor Bauer.

Bruchsal, the 17th September 1868.

[Seal]    The Grand District Court.    FISCHER,

*vide* SCHNEIDER.

This exhibit was at first admitted, and afterwards stricken out on demurrer by the plaintiff and a bill of exceptions sealed.

The defendant then gave in evidence a second deposition of Francis J. Debold.

To the third interrogatory, of which he said :

[" My mother, who is dead, was born Frances Hermann, of Odenheim and had the following brothers and sisters : Francis Peter Hermann, born 20th October 1790; Francis Joseph Hermann, born 26th April 1793; Charles Hermann, born 12th June 1800; Frances Hermann, born 21st April 1788; Theresa Hermann, born 27th December 1795."]

The plaintiffs objected to the part in brackets; it was rejected by the court and a bill of exceptions sealed.

" Mary Catharine Herman, born 17th October 1798.    Here it is to be remarked that Frances Hermann is my mother.    Of all these none is yet living except Theresa Hermann." * * *

To the fourth interrogatory he said :

" I was acquainted with Mary Ann Rosenagle in her infancy, and, indeed, when she was at the age of three or four years. Then she lived with her parents at Odenheim, or properly, only with her mother, who was the above-named Mary Catharine Hermann. The latter was said, at the time when I became acquainted with the female plaintiff, to have been a widow already, and to have been married formerly to the master locksmith, Kring, of Odenheim. When the female plaintiff was at the age of four years, her mother removed with her to Schriesheim, and there she remarried, but I do not know to whom. From Schriesheim they emigrated then to America. In the time when I was acquainted

with the female plaintiff, she had no brothers or sisters. The female plaintiff was born, I think, about the year 1830. I do not know it exactly; I can but remember that I am a few years older than she."

The defendant offered "authenticated copies of the laws of Baden and of the edict of 29th of May 1811," to which certificates were attached as follows:

"No. 3251.

"It is hereby certified that the sections of the Common Law of the Grand Duchy of Baden and of the Statute of the Grand Duke passed on the 29th day of May, eighteen hundred and eleven, contained in the above extracts, agree verbally with the copies of these laws as they are recognised by the courts, and that these laws are now in full force and power for the whole Grand Duchy, and that Mr. Wolf, counsellor-at-law, who has signed the extracts and the translation thereof, has been sworn as interpreter of the English language.

Carlsruhe, the eighth day of October 1868.

The Circuit and Supreme Court of the Grand Duchy: section of the Common Pleas.

[Court Seal.]                                    BERGER."

"No. 584.

"I certify the above document.

Carlsruhe, October 31st 1868.

Ministerium of the Exterior, Grand Duchy of Baden.
            (Signed)                                BORKH.
                                                YOST."

{ Seal of the
  Secretary of Foreign Affairs,
    Grand Duchy of Baden. }

Attached was the consulate seal of the United States, as follows:

"No. 357.

Consulate of the United States of America for the Grand Duchy of Baden:

"I, G. F. Kettell, consul of the United States of America, do hereby certify that Mr. Leopold Yost, whose name is subscribed to the paper hereunto annexed, was at the time of subscribing the same, Chief Clerk of the Department of Foreign Affairs for the Grand Duchy of Baden, duly commissioned to execute such acts, and that his signature thereto is genuine.

In testimony whereof, I have hereunto subscribed my name and affixed the seal of the consulate aforenamed, in the city of Carlsruhe, the 31st day of October, A. D. 1868, and of the Independence of the United States of America the 93d.

{ Seal of the Consulate of          GEO. F. KETTELL,
    the U. S. at Baden. }       Consul of the United States.".

[American Life Ins. & Trust Co. *v.* Rosenagle.]

Then followed the sections of the law offered in evidence; they did not appear in the paper book.

This was objected to by the plaintiff, rejected by the court, and a bill of exceptions sealed.

Herman Fromberger was called by the plaintiff in rebuttal; he testified that he had an interview with Mrs. Kring in 1856. On cross-examination, he said that she told him where she was born. On re-examination, plaintiff proposed to ask witness what she said as to the time when she was born, and to give the whole conversation of which, on cross-examination, he has given a part. The defendants objected to the offer on the ground that Mrs. Kring's declarations were not originally evidence, and have not been made evidence by the course of the cross-examination. It was admitted, and a bill of exceptions sealed. Witness said that she said, she was born 2d of February 1807, in Germany, in Manheim; her father's second name was Hermann.

There was other evidence, by plaintiff, tending to show that Mrs. Kring was not the person referred to in the depositions, and generally to answer defendants' case.

The verdict was for the plaintiff for $5167.49.

The defendants took a writ of error, and assigned for error:

1. Rejecting the portion of the testimony of Debold as to the letters addressed to him by plaintiff.

2. Rejecting the portion of the testimony of Bauer as to the keeping of the church record of Odenheim.

3. Rejecting "Exhibit No. 2," attached to Bauer's deposition.

4. Rejecting the portion of Debold's second deposition included in brackets.

5. Rejecting the copies of the laws of Baden, &c.

6. Admitting the testimony of Fromberger as to Mrs. Kring's statement of her age.

*H. M. Hoyt* and *Hazlehurst* (with whom was *E. N. Willard*). —The identity of the person is inferred from the identity of name: 1 Greenl. Ev., sect. 278 d. The testimony of Debold as to the pedigree of his relations, was admissible: 1 Greenl. Ev., sects. 103, 104, 134. Exhibit No. 2, as an extract from a church register, was admissible: Kingston *v.* Lesley, 10 S. & R. 383; Douglass *v.* Sanderson, 2 Dall. 117; Dussert *v.* Roe, 1 Wallace Jr. 39; Stoever *v.* Whitman, 6 Binn. 416; 1 Greenl. Ev., sects. 91, 128, 483, 484; 1 Stark. Ev. 195; Noyes *v.* White, 19 Conn. 250. The original, being a document of a public nature, a sworn copy is admissible: 1 Greenl. Ev., sects. 91, 483, 484; 1 Stark. Ev. 181; People *v.* Denison, 17 Wendell 312.

*H. W. Palmer* and —— *Abbott* (with whom was *J. Handley*), for defendants in error.—Hearsay testimony of pedigree is re-

[American Life Ins. & Trust Co. v. Rosenagle.]

stricted to deceased persons, related to the person whose pedigree is in question : 1 Greenl. Ev., sect. 103, 486 ; McCausland v. Fleming, 13 P. F. Smith 36. Foreign laws must be proved either by authenticated copies, or testimony of competent witnesses : 1 Greenl. Ev., sect. 486. A church register is not proof of identity : 1 Stark. Ev. 299. The written evidence establishes no more than that which took place between persons bearing the same name, &c. : Brown v. Petre, 2 Swanst. 235 ; Draycott v. Talbot, 3 Brown P. C. 564 ; 1 Phillips Ev. 233 ; 2 Id. 111 ; Birt v. Barlow, 1 Doug. 162. There was not sufficient evidence of loss of the letters spoken of by Debold : Simpson v. Dall, 3 Wallace 474. The admissibility of evidence of entries in a register, depends on the public duty of the person keeping it to make the entries : France v. Andrews, 65 Eng. C. L. Rep. 759 ; Ennis v. Smith, 14 Howard 427 ; Wilcocks v. Phillips, 1 Wallace Jr. 47.

Mr. Justice WOODWARD delivered the opinion of the court, May 10th 1875.

The first error assigned in this record is based on the rejection of that part of the deposition of Francis Joseph Debold in which he said : " By the letters which Rosenagle and his wife addressed to me from Scranton, I came to know that she (Mrs. Maria Katharine Kring) died in the said town. Rosenagle and his wife did write to me many times, but I have not more their letters." The decision of the court below was apparently controlled by the rule stated in 1 Greenl. Ev., sect. 88, that "if a witness, being examined in a foreign country upon interrogatories sent out with a commission for that purpose, in one of his answers states the contents of a letter not produced, that part of the deposition will be suppressed, notwithstanding, he being out of the jurisdiction, there may be no means of compelling him to produce the letter." The authority for the text in Greenleaf was the case of Steinkeller v. Newton, 9 C. & P. 313. In rejecting the statement of the witness, Tindal, C. J., said : " I think it would be a most inconvenient and a most dangerous rule to hold, that it should rest in the option of the party examined, whether he will produce the document or not. We have no power to compel the witness to give any evidence at all, but if he does give an answer, that answer must be taken in relation to the rules of our law on the subject of evidence." It is to be observed that in that case, no explanation whatever was given of the absence of the paper. Here, the witness said he had not preserved the letters of which he spoke—in his own words, he had " not more their letters." The defendants below were resisting a recovery on a policy of insurance on the life of Maria Katharine Kring, which, it was alleged, had been obtained by false and fraudulent representations by the plaintiffs. The immediate question related to the identity of Mrs. Kring, who had been represented

27 P. F. SMITH—33

in the application as having been born in 1807, and who was alleged by the defendants to have been born in 1798. The actual date of her birth was offered to be shown by other proof, and the establishment of the identity of the Maria Katharine Hermann who was born in the parish of Odenheim on the 17th of October 1798, with the Maria Katharine Kring who died in Scranton on the 19th of April 1867, was of vital importance to the defence. The fact stated was one which the witness had learned through a correspondence with his cousin Mary Ann Rosenagle and her husband, who were the plaintiffs. No question was made as to the authenticity of the letters. The witness had personally known both Mrs. Rosenagle and Mrs. Kring. The stringency of the rule requiring search for documents and proof of their loss, in order to make parol evidence of their contents admissible, is proportioned always to the character and value of the documents themselves. These letters were between relatives, and do not appear to have had any such obvious importance as to require care for their preservation. Slight proof of loss, therefore, was sufficient. This principle has uniformly been applied where documents, which from their very nature would have only transitory interest, have been in question. In the United States *v.* Doebler, 1 Bald. 519, on the trial of an indictment for forging and delivering bank-notes, after proof of the fact of forging a large quantity and the delivery of one note, it was held that parol evidence of the contents of a letter from the defendant to an accomplice on the subject of counterfeit notes, for which the accomplice could not account and had not searched, but believed to be lost, was admitted. The principle extends to documents of more grave significance, if it appears, when the witness is examined, that no rational motive for keeping them existed. A deposition will not be rejected because the witness speaks of papers not produced, if it appear that the papers are such as would not probably be preserved for so great a length of time as had elapsed when the testimony was taken, or are not in the possession or power of the witness or the party offering the deposition : Tilghman *v.* Fisher, 9 Watts 441. The principle is especially applicable to the contents of family letters received by a witness in a foreign country. The evidence should have been admitted.

The court rejected that part of the deposition of Alexander Bauer, in which he said the church records at Odenheim, as well as in the whole of the Grand Duchy of Baden, " are now kept by authority of the Badish common law, established since the year 1810, and enacted by the grand duke then being, and of the edict of the 29th of May 1811. Before this time they were kept according to the laws of the country then established." This ruling is the ground of the second error alleged. As Mrs. Kring was born before 1810, and as the transcript called Exhibit No. 2, which the defendants offered, contained no entry later than 1805, the signifi-

cant portion of the rejected paragraph was the last sentence. Why was not the sworn statement, that these records, showing that the births, baptisms, marriages and deaths of the parish, had been kept before the year 1810, " according to the laws of the country then established," admissible ? The witness said he was the Catholic dean and parson at Odenheim—that " these records have already existed many centuries, and each parson receives the church books from his predecessor, which altogether form one continued series,"—and that he was the proper keeper and custodian of the records. The law. of a foreign country on a given subject may be proved by any person, who, though not a lawyer, or not having filled any public office, is or has been in a position to render it probable that he would make himself acquainted with it : Vanderdunk v. Thelluson, 8 Q. B. 812. Here, the witness was the custodian of records which had existed for centuries, and which he swore had been kept in accordance with the laws in force when the entries were made. It was his duty to know, and he testified that he did know, the law relating to the records in his charge. His knowledge was just that which the responsible head of a public office would be assumed to have of the law which had controlled the past operations of his department—just that which would be imputed to a surveyor-general in the year 1875, of the law that governed the land-office in the year 1800. His position, and the facts to which he testified, made the rejected evidence competent.

The third error assigned consisted in the striking out, on demurrer, of the transcript made by Parson Bauer from the parish records, showing the dates of the births of Mrs. Kring and her brothers and sisters, the children of Joseph and Elizabeth Hermann. This should have gone to the jury. It was manifestly a tabulation of several entries, but the witness had sworn that he had extracted the details from the records. It was evidence entirely aside from the meaningless certificate signed " Fischer *vide* De Scheider," at the end. If its competency depended upon that, a literal exemplification of each entry would have been requisite; but it depended on the oath of the witness that he had copied the entries in the transcript. Where the proof is by a copy, an examined copy duly made and sworn to by any competent witness is always admissible :" 1 Greenl. Ev., sect. 485. That the facts embodied in the transcript were competent, is clear from the cases of which Hyam v. Edwards, 1 Dall. 2, and Kingston v. Lesley, 10 S. & R. 383, are representative.

The error specified in the fourth assignment was the rejection from the deposition of Francis Joseph Debold of his statement of the births of his uncles and aunts, with the exception of that of his aunt Mrs. Kring. The purpose of the defendants was to show that the facts relating to his uncles and aunts, as stated by the witness, were identical with the facts relating to the children of

[American Life Ins. & Trust Co. *v.* Rosenagle.]

Joseph and Elizabeth Hermann, as stated by Parson Bauer, the testimony of each fixing the 17th of October 1798, as the date of the birth of Maria Katharine Hermann (Mrs. Kring). The question was one of identity, and it was sought to establish this by proof of Mrs. Kring's pedigree. The witness was her nephew. The term pedigree includes not only descent and relationship, but also the facts of birth, marriage and death, and the times when these events happened. These facts may be established by general repute in the family, proved by a surviving member of it, in all cases where they occur incidentally and in relation to pedigree : 1 Greenl. Ev., sects. 103, 104. For the purposes of this case, this evidence was legitimate.

What is called in the record the " exemplication of the common and statute laws of Baden," was properly rejected. The instrument declared " that the sections of the common and statute laws of the Grand Duchy of Baden, and of the statute of the grand duke, passed on the 29th of May 1811, contained in the above extracts, agree verbally with the copies of these laws as they are recognised by the courts." The extracts themselves·are not on the paper books. At the foot of the paper are the words, " The Circuit and Supreme Court of the Grand Duchy : Section of the Common Pleas. Berger;" and the seal of the court is affixed. Another endorsement follows in this form : " I certify the above document. Carlsruhe, October 31st 1868. Ministerium of the Exterior, Grand Duchy of Baden. Borkh. Yost." The seal of the secretary of foreign affairs is added to this remarkable paper. And then the United States consul certifies that Mr. Leopold Yost, whose name is subscribed to the paper annexed, is chief clerk of the department of foreign affairs for the Grand Duchy of Baden, duly commissioned to execute such acts, and that his signature is genuine. This answers to fix the status of Mr. Yost, but it does not help to explain the authority of " Berger," nor what the document which he signed was certified by Yost to be. The exemplication proves nothing except certain peculiarities of official form. The fifth assignment of error is unfounded.

The sixth specification relates to a mere casual detail of the trial, which can have no future significance and requires no remark.

Judgment reversed, and *venire facias de novo* awarded.