# McDonald v. Monongahela Cemetery Company, Appellant.

*Corporations—Cemeteries—Sale of lands.*

An incorporated cemetery company may sell part of its lands not used for burial purposes so long as the sale proposed does not deprive the lot holders of the use of and reasonable access to their lots or interfere with the integrity of the cemetery as a burial place. Such a corporation may sell a part of its lands to a Roman Catholic church for burial purposes and such a sale is not invalidated by the fact that the church and the cemetery company are each to receive one-half of the proceeds of the sale of lots to the members of the church.

Argued Oct. 19, 1909. Appeal, No. 54, Oct. T., 1909, by defendant, from decree of C. P. No. 2, Allegheny Co., Jan. T., 1908, No. 207, on bill in equity in case of Rev. Robert Mc-Donald, Trustee, Rector and Pastor of St. Thomas' Roman Catholic Congregation of the Borough of Braddock, v. Monongahela Cemetery Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Bill in equity for an account and for specific performance of a contract, and to convey cemetery lots.

SHAFER, J., filed the following opinion:

### FINDINGS OF FACT.

1. The defendant company was incorporated February 24, 1883, in the common pleas of Allegheny county, under the corporation Act of April 29, 1874, P. L. 73, for the purpose of maintaining a public cemetery. The charter provides that the company shall have power to purchase land, to divide it into suitable plats and burial lots, to sell and dispose of the same for the purpose of sepulcher to individuals, societies or congregations, and that the income of the corporation, after paying for the land, shall be applied to the improvement of the cemetery and its perpetual maintenance.

2. The defendant company thereupon purchased from various persons contiguous tracts of land, containing in all about sixty-five acres, for the purpose of a cemetery, and proceeded to improve the same and sold lots therein for burial purposes.

3. Thereafter, on October 16, 1883, an indenture was made between the defendant company and the Very Rev. John Hickey, rector for and in behalf of St. Thomas' Roman Catholic Congregation, being exhibit "A" of the bill, whereby the cemetery company granted, bargained and sold to the rector and his successors on behalf of the congregation a certain tract of land described by metes and bounds, containing eighteen acres, being part of the lands purchased for cemetery purposes by the company, said lands to be thereafter known as St. Thomas' Roman Catholic Cemetery. The agreement provides that the cemetery company shall lay out in sections, lots and graves, plant shrubs and otherwise ornament, not exceeding five acres of this land at a time as the demand for burial places might require, the average price of the lots being fixed at from $25.00 to $50.00, with power in the rector of the church to increase or diminish this as should be deemed expedient. It is then agreed that when lots are sold in St. Thomas' division of the cemetery the cemetery company is to receive one-half the proceeds of such sale and the congregation the other half, to be paid over monthly. It is further agreed that the cemetery company will at any future time make a deed in fee to the church for all the unsold and unoccupied portion of the St. Thomas cemetery upon the payment of $1,000 per acre, and an equitable adjustment of the improvements made and the money expended on the same, and also that they will deed in fee simple that portion of the cemetery in which interments have been made and paid for up to that date, the Monongahela Cemetery Company thereafter to relinquish all claims to control in any way of lots in St. Thomas' cemetery, the St. Thomas' cemetery, however, reserving right of way over all the avenues and streets in the rest of the company's ground; and it is further provided that when all the bonds and moneys invested in the purchases and improvements of the Monongahela

Cemetery Company have been paid and redeemed, then the company without any further payment will convey to St. Thomas' church in fee all the lots remaining unsold in the eighteen acres; and further that the cemetery company will give one acre as a burial place for the poor of St. Thomas and other neighboring churches, being Catholics, and that the cemetery company will not sell burial privileges to any persons except such Catholics as shall first have permits from the pastors of either St. Thomas or St. Joseph Roman Catholic churches.

4. Shortly thereafter the eighteen acres above mentioned was dedicated as a cemetery according to the rites of the Roman Catholic church and it has ever since been used as a burying place by the congregation for its members and others, and a large number of lots have been sold, a large number of persons buried and many costly monuments and improvements erected by the lot holders, members of the church.

5. The debt of the cemetery company incurred for the purchase of the land and the improvements thereon is over $100,000.

6. No accounting has ever been had between the parties of the proceeds of sales of lots in the St. Thomas' division of the cemetery, although various communications were had between the parties in regard to the same. It is claimed by the defendants that in 1879 it was agreed that the contract between the parties in regard to these lots should be abandoned and canceled, that all money then in the treasury of the company and thereafter to be realized from the sale of lots should be applied to the debts of the company, the reason alleged for this contract being the threatened insolvency of the company and appointment of a receivership. This allegation the defendant has failed to prove. The testimony offered in support of it is that of Mr. Corey, the president, as to conversations had with Father Hickey, rector of the church. It seems very probable that the financial situation of the cemetery company discussed between the parties was one reason at least for the delay of the congregation in calling for an account, but it does not appear that either Mr. Corey, as president of the company, or Father Hickey, as rector of the church, were authorized to annul the

contract for the company and the congregation respectively and even if they were, the testimony is too vague and indefinite as to what was said and done to justify a finding that the contract was in any way abandoned or surrendered.

7. A large number of sales of lots have been made by the cemetery company in the St. Thomas' division above mentioned for which moneys have been received by the cemetery company and no part of the purchase money paid to the congregation, and a considerable credit, therefore, stands upon the books of the cemetery company in favor of the congregation if the contract is to be carried out.

### CONCLUSIONS OF LAW.

1. The defenses set up to the bill by the defendant are substantially: First, that the contract in question had been modified or abandoned; and second, that it is ultra vires. The finding of fact that there was no modification or abandonment of the contract, if correct, disposes of the first.

2. It is claimed that the contract is ultra vires because the payment of one-half of the proceeds of the sale of lots in the St. Thomas' division to the congregation is a diversion of the income from cemetery purposes, and that the conveyance in fee of such part of the eighteen acres as is not actually used for burial purposes by the congregation on payment of the $1,000 per acre is a diversion of part of the lands from the use to which they were dedicated.

3. As to the first of these claims that the company has no right to divert from cemetery use any part of the proceeds of the sale of lots, we are of the opinion that the cemetery company has power to sell its lots, provided they are sold for burial purposes, for any price it can procure for the same, and that it has a right if it thinks proper to do so to agree to pay a commission or share of the purchase price to an agent for sale or any other person or body in a proposition to increase the sale of lots and bring customers which it would not otherwise have, and that the arrangement therefore to pay one-half of the proceeds of sales of certain lots to a Catholic church whose members were to be the purchasers is not ultra vires.

4. The defendant claims that the cemetery company is a quasi public corporation, and that when it has once purchased a tract of land and opened it for cemetery purposes, it is incapable of selling any part of it except for burial purposes. This we do not understand to be the law. There seems to be no reason why a cemetery company may not sell its land as well as any other corporation, provided it does not infringe upon the rights of the grantees of burial privileges. There seems to be no reason why it may not sell parts of its land not used for burial purposes, so long as the sale proposed does not deprive the lot holders of the use of and reasonable access to their lots or interfere with the integrity of the cemetery as a burial place. It is not claimed in this case that the sale in question does any of these things, and the only objection to the sale of the unoccupied portions of the eighteen acres that could be made would seem to be by the lot holders in that part of the cemetery who might object to the lots immediately surrounding their lots being sold, but we have here no such objection.

5. The deed in question has been discussed by counsel on both sides as a purely executory contract and some parts of it speak as if that were the intention of the parties. It will be observed, however, that the operative part of the deed is not an agreement to sell the eighteen acres to the congregation, but is a formal and complete conveyance by the usual technical words for that purpose, in the present tense, from the cemetery company to the church. The other parts may be treated as a provision for the payment of the purchase money, the conveyance being made not for any specified purchase money, but "for and in consideration of the payments and conditions hereinafter mentioned to be fulfilled strictly and lawfully made by the parties of the second part."

6. Even if the contract were ultra vires, it does not now lie in the power of the defendant to allege that as a defense, it having for a long time acted upon the contract and reaped the benefits of it and having in its possession the fruits of it.

7. We are of the opinion, therefore, that the plaintiff is entitled to an account of the proceeds of sales of lots made by the

cemetery company in the eighteen acres designated as St. Thomas' cemetery, in order that there may be ascertained what amount, if any, is due from the cemetery company to St. Thomas' congregation on account of the sale of lots and to a decree for the payment thereof; and further to an account of the moneys expended by the cemetery company for improvements upon or connected with the St. Thomas' cemetery, in order that the equitable share of such improvements made and money expended on said land may be ascertained, and further to a decree for specific performance of the contract for the conveyance or further assurance to the congregation of all the unsold and unoccupied portion of said St. Thomas' cemetery on payment of $1,000 per acre, and an equitable share of the improvements made and money expended on the same, without making payment, however, for such part of the one acre set aside for burial of paupers as is not already occupied, and to a like conveyance without further payment of that portion of the said St. Thomas' cemetery in which interments have been made and paid for, together with the rights of way in said deeds reserved over the other portions of the Monongahela Cemetery Company's land, and that each of the parties pay one-half the costs.

*Joseph F. Mayhugh,* for appellant.—The contract is ultra vires and void: Evergreen Cemetery Assn. v. Beecher, 53 Conn. 551; Com. v. Viall, 84 Mass. 512; Stockton v. Newark, 42 N. J. Eq. 531 (9 Atl. Repr. 203); Brown v. Maplewood Cemetery Assn., 85 Minn. 498 (89 N. W. Repr. 872); Kincaid's App., 66 Pa. 411; Hancock v. McAvoy, 151 Pa. 460.

Cemetery companies are quasi public corporations: McLeod v. Normal School, 152 Pa. 575; Foster v. Fowler, 60 Pa. 27; Rosehill Cemetery Co. v. Hopkinson, 114 Ill. 209 (29 N. E. Repr. 685).

The charter of a cemetery company must be strictly construed: Mount Moriah Cemetery Assn. v. Com., 81 Pa. 235.

The contract involved in the case is against public policy and void: Richardson v. Crandall, 48 N. Y. 348; Brown v. First Nat. Bank, 137 Ind. 655 (37 N. E. Repr. 158); Good-

year v. Brown, 155 Pa. 514; Rosehill Cemetery Co. v. Hopkinson, 114 Ill. 209 (29 N. E. Repr. 685); Mount Moriah Cemetery Assn. v. Com., 81 Pa. 235; Boyd v. Am. Carbon Black Co., 182 Pa. 206; Wolford v. Crystal Lake Cemetery Co., 54 Minn. 440 (56 N. W. Repr. 56).

The contract involved in this case is void because it attempts to bind the defendant corporation to do that which the law expressly forbids public corporations to do, to wit, alienate the property of the corporation. For this reason it is also against public policy: Shrewsbury, etc., Ry. Co. v. Northwestern Ry. Co., 6 H. L. Cases, 113; Atlantic, etc., Tel. Co. v. Union Pac. Ry. Co., 1 McCrary (U. S.), 541; Middlesex R. R. Co. v. Boston, etc., R. R. Co., 115 Mass. 347; Richardson v. Sibley, 93 Mass. 65; Susquehanna Canal Co. v. Bonham, 9 W. & S. 27.

The contract involved in this case is void because it binds the corporation to the execution of a contract "unfitting the corporation for the discharge of the duties which it owes to the public and for the execution of which it was created by the state:" Central Transp. Co. v. Pullman's Palace Car Co., 139 U. S. 24 (11 Sup. Ct. Repr. 478); Middlesex R. R. Co. v. Boston, etc., R. R. Co., 115 Mass. 347; Troy, etc., R. R. Co. v. Boston, etc., Ry. Co., 86 N. Y. 107; Abbott v. Johnstown, etc., R. R. Co., 80 N. Y. 27; Pittsburg, etc., R. R. Co. v. Bedford, etc., R. R. Co., 81* Pa. 104; Stewart's App., 56 Pa. 413.

*Charles D. Gillespie*, with him *Patterson, Sterrett & Acheson*, for appellee.—The policy of our government is to render real estate held by corporations, such as appellant, unfettered and free for alienation, even where the deed expressly denotes the use to which it has to be devoted: Burton's App., 57 Pa. 213; Wilkes-Barre v. Historical etc., Society, 134 Pa. 616; Barr v. Weld, 24 Pa. 84; Methodist Church v. Old Columbia Public Ground Co., 103 Pa. 608; Kerlin v. Campbell, 15 Pa. 500; Sellers Church Petition, 139 Pa. 61; Wright v. Linn, 9 Pa. 433; Griffitts v. Cope, 17 Pa. 96.

Corporations or associations holding property in trust for special purposes can always convey a fee in the absence of any

restraint on alienation: Sellers Church Petition, 139 Pa. 61; Wilkes-Barre v. Wyoming Historical, etc., Society, 134 Pa. 616; Seebold v. Shitler, 34 Pa. 133; Kerlin v. Campbell, 15 Pa. 500.

And a quasi public corporation cannot only sell its property for which it has no use, M. E. Church v. Public Ground Company, 103 Pa. 608; Union Canal Company v. Young, 1 Whart. 410, but it can give it away if it tends to aid its corporate business: Taunton v. Royal Ins. Company, 2 Hem. & M. 135; Hutton v. West Cork Ry. Company, L. R. 23 Ch. Div. 654; Henderson v. Bank of Australasia, L. R. 40 Ch. Div. 170; Steinway v. Steinway & Sons, 17 Misc. Rep. 43 (40 N. Y. Supp. 718); Louisville, etc., R. R. Co. v. St. Rose Library Society, 91 Ky. 395 (15 S. W. Repr. 1065).

PER CURIAM, November 5, 1909:

Decree affirmed on the opinion of the court below.