LEON V. ANDERSON, HELEN F. LOATMAN and RUTH A. WINCHESTER, Plaintiffs,

*vs.*

THE MOUNT ZION CEMETERY ASSOCIATION, a corporation of the State of Delaware, HARRISON HACKETT, SR., WYONA S. LAMBERT, ROSIE D. REDDING, JOSEPH BROWN and HANNIBAL COOPER, Defendants,

HARRY A. SIMEONE and ALEXIS CASERTA, Intervenors.

*New Castle, August 30, 1962.*

*Louis L. Redding,* Wilmington, for plaintiffs.

*G. A. Peterson,* Wilmington, for defendants.

*James P. Collins* of Metten, Healy & Collins, Wilmington, for intervenors.

MARVEL, Vice Chancellor: Plaintiffs, who are allegedly members of Mount Zion Cemetery Association, brought this action for the primary purpose of preventing such defendant from selling a portion of its cemetery property. Mount Zion Cemetery Association is a non-profit corporation incorporated in 1903 for the purpose of maintaining a place of "sepulture or burial of the dead" in Wilmington, its charter providing inter alia that such corporation shall have the power "* * * to purchase, take, own, hold, deal in, * * * or in any manner whatever dispose of real property, wherever situated * * *." Title to the corporation's present graveyard, which is located on the Wilmington-Lancaster Turnpike in Christiana Hundred, dates from 1918.

Plaintiff's complaint specifically prays that purported officers of the corporate defendant be enjoined from executing a deed conveying to would-be purchasers a portion of their corporation's cemetery property and that the Court also determine the validity of the election of the incumbent directors and officers of the corporation. Such proposed sale was temporarily restrained and thereafter the persons to whom the corporation seeks to convey some 1.824 acres of land were permitted to intervene. Plaintiffs thereafter answered the intervenors' complaint and intervenors then moved for summary judgment of specific performance. This is the opinion of the Court on such motion.

On July 22, 1960, Harry A. Simeone and Alexis Caserta, intervenors in this action, entered into a contract with the Mount Zion Cemetery Association for the purpose of purchasing a part of its property on the Wilmington-Lancaster Turnpike. It is conceded that

the Association is authorized by its charter and by-laws to sell and convey the whole property of the corporation on the affirmative vote of three-fourths of all the directors, and further that the contract of sale sought to be enforced was duly executed on behalf of the association by Harrison Hackett and Wyona S. Lambert in their purported capacities as president and secretary respectively of the Association. The defendants named in the suit, other than the corporation itself, are those persons who hold themselves out to be the duly constituted directors and officers of the corporation. No answer was filed to the original complaint, the intervenors having assumed the laboring oar by seeking specific enforcement of the contract here under attack. It is also conceded that neither the deed conveying its present cemetery property to Mount Zion nor such corporation's charter contain language which would constitute a limitation on the use of such corporation's present lands either by way of a trust restriction or otherwise.

The present Mount Zion cemetery tract, of which the parcel in litigation is a part, was, as noted earlier, acquired by the Association in 1918 after title to an earlier cemetery established in 1864 within the City of Wilmington and which was no doubt held subject to a trust had been conveyed to the Woodlawn Company. Significantly, of the original 6.42 acres of the present graveyard, .4441 acres were conveyed in 1958 to the State of Delaware without objection for the purpose of widening a public road. The area of the cemetery thereafter remaining amounts to slightly less than 5.98 acres, the contract involved in this suit being concerned with somewhat less than one-third of such remainder.

It is conceded not only that no human remains have been interred on the portion of the tract sought to be sold to the purchasers, at least in the period following Mount Zion's acquisition of such lands, but that no lots have either been sold or laid out by the defendant corporation within that parcel. At the present time no cemetery improvements such as roads or planting have been made nor are any contemplated in this area in the immediate future.

Plaintiffs contend that the parcel which intervenors seek to acquire is suitable for burial purposes both from a utilitarian point of view and in the light of public health needs and claim that retention

of the entire site by the corporation is necessary in order to maintain the physical integrity of the cemetery. The lot holders also claim that in any event the Association is financially in a position to make any improvements needed to make the land in question entirely suitable for burial purposes. The intervenors, on the other hand, take the position that while the physical condition of the land in dispute is such as to make it unsuitable for the burial of the dead, the geology of such ground is not an issue in the case and that they are entitled to summary judgment as a matter of law.

While intervenors, in opposing plaintiffs' motion, seek to make a material issue out of the parties' opposing contentions concerning the physical condition of the cemetery acreage here in dispute, I find it unnecessary in disposing of the pending motion to consider possible future use for burial purposes of the lands here involved. I say this because such lands have not yet been devoted to the interment of the dead or in fact even set aside for any individual lot purchaser. There is no dispute as to these latter facts.

Plaintiffs do make two basic contentions which strike at the merits of intervenors' contentions, namely that the officers and directors making the contract of sale here in issue did so without proper authority because they were not validly elected and that the land in question is in any event subject to a trust which prevents its sale to intervenors.

As to the first point, it appears from the intervenors' uncontradicted affidavits that in entering into the contract in dispute not only did such purchasers reasonably rely on the ostensible authority exercised by Harrison Hackett and Wyona S. Lambert as president and secretary respectively of Mount Zion but that such authority is a matter of public record in the office of the Secretary of State in Dover. It is further a matter of public record that such persons as corporate officers executed a deed in 1958 conveying a portion of the present Mount Zion cemetery to the State of Delaware, a transaction duly authorized by the board of the corporation.

Furthermore, all of the directors of the corporation have expressed in writing their approval of the transaction here proposed,

the by-laws of the corporation evidently requiring that such approval be by three-fourths of the directors. Finally, insofar as plaintiffs' complaint is directed towards a contest of the individual defendants' title to office, actions taken by such persons, while in office, are not a proper subject for review in proceedings under the statute, *In Re Tonopah United Water Co.,* 16 *Del.Ch.* 26, 139 *A.* 762.

Accordingly, in the absence of any showing of fraud or proof that intervenors had knowledge that such ostensible officers and directors were not actually authorized to act for the corporation, intervenors should, in my opinion, be permitted to have their contract enforced unless such lands are in themselves inalienable because of a trust provision or other impediment against alienation. Compare *Brown v. Insurance Equities Corporation,* 21 *Del.Ch.* 273, 187 *A.* 18. Furthermore, it has been established by intervenors that the sale was unanimously approved by the corporate directors in office and there is nothing of record which supports the contention that the contract here sought to be enforced must be approved by the members of the Association.

In concluding my comments on this point, it must be noted that while plaintiffs generally charge that the present officers and directors of Mount Zion were illegally elected at an election held in April 1960, express provisions as to the calling of meetings of members for the election of directors, including provisions as to notice and a quorum, are absent both from the corporation's charter and by-laws.

As to the second point, I am satisfied that the present premises are clearly unencumbered by an express trust despite the fact that funds for the purchase of such tract were derived in part from the sale of an earlier graveyard owned by the corporation in Wilmington which had been encumbered with a trust provision. The lot holders then argue in the alternative that notwithstanding the absence of any language in the 1918 deed designed to create an express trust, land devoted to cemetery purposes must be treated in law as the subject matter of a charitable trust and preserved inviolate. This is said to be required because of the public interest involved in the interment of the dead. It is contended therefore that the holders of lot certificates as beneficiaries of such a trust can prevent any interference with the

alienation of any part of the cemetery tract. However, while there are no Delaware cases directly in point, the contentions of the lot holders, in my opinion, are not tenable. While the law does seek to afford protection to the actual owners of specific burial lots, such rights are not normally derived from a trust, either express or implied, but are an expression of a policy of the law that the owner of cemetery property should not generally speaking be permitted to disturb graves located in an established graveyard. This is so because the law generally creates an easement or the like in favor of lot owners, their heirs and assigns, permitting them continued use of an access to their lots and assuring them of the continued preservation of a cemetery even when such is sold. In Mount Zion's charter such estate is referred to as being a "qualified inheritance".

■ And while there is authority to the effect that a conveyance to a church of land to be used for burial purposes creates a charitable trust in said lands because of the religious purpose thereby intended, *Trustees for Baptist Church of Borough of Wilmington v. Laird*, 10 *Del.Ch.* 118, 85 *A.* 1082, and *Chew v. First Presbyterian Church (D.C.Del.)* 237 *F.* 219, a religious purpose is not shown to be here implicated, no church having been involved in the grant and the conveyance to the Association having been made by an unrestricted deed. In short, the Association's taking of the land here in dispute and its retention thereafter in no way falls within the category of purposes traditionally deemed to be "charitable".

■ Secondly, the rights which the plaintiffs claim as lot owners belong to each of them individually. No separate interest in the Association's cemetery tract is acquired until a lot is purchased. Only at that point does the law confer its protection upon an individual lot owner. Undeveloped cemetery property, not otherwise subject to any express or implied limitation or restriction, is therefore generally considered freely alienable by the owner thereof. *Hill v. Towson Realty, Inc.*, 221 *Md.* 389, 157 *A.2d* 796. Compare, *McDonald v. Monongahela Cemetery Co.*, 226 *Pa.* 77, 75 *A.* 38.

■ I find nothing opposed to this view either in *Security Trust Co. v. Willett*, 33 *Del.Ch.* 544, 97 *A.2d* 112, which merely holds that private trusts for the maintenance of a burial plot in Delaware are

not subject to the rule against perpetuities, or in section 3551 et seq. of *Title* 12 *Del.C.* pertaining to the perpetual maintenance of burial lots. Such sections, if at all applicable, could have only prospective effect on the application of the proceeds of the sale here sought to be enjoined. They cannot be invoked to enjoin the sale itself.

I conclude that there having been no interments in the particular parcel here sought to be purchased and no lots having therein been sold or laid out, and it further appearing that no interments are likely to occur therein in the immediate future, the parcel here in dispute may be sold free and clear of any claim or interest of an actual lot owner or member.

It follows from the foregoing that intervenors are entitled to summary judgment. A decree of specific performance of the contract here in issue will be entered but only as to the lands described in the agreement of sale and later made the subject of a survey attached to such agreement. The phrase in the agreement which reads "* * * together with the right in purchaser to buy additional adjoining footage in exchange for certain improvements to sellers retained land—the exact dimensions to be determined by a survey * * *" is too indefinite to constitute an agreement subject to specific enforcement. Intervenors seek no relief as to such vague clause of the contract and none will be granted.

Order on notice.