**Barrick v. Hockensmith**

*Thomas Martin,* for plaintiff.
*William Mark,* for defendants.

WEIDNER, *J.,* May 23, 1975—

## STATEMENT OF THE PLEADINGS

At issue in this proceeding is the use to which a

tract of land belonging to defendants, Orval W. and Betty Hockensmith, shall be devoted. The tract is located in Upper Mifflin Township, Cumberland County, Pa., and, with the structure which occupies a portion of it, has in the past been used as a burial ground and church.

Despite the structure's abandonment by religious organizations and the burial ground's infrequent use, plaintiff, Emory E. Barrick, prays that the former uses be continued by defendants. To this end, plaintiff seeks to appoint as the tract's trustee either the Supervisors of Upper Mifflin Township, pursuant to the Second Class Township Code of May 1, 1933, P.L. 103, art. VII, sec. 702, as amended, 53 PS §65728, defendants, himself, or other persons. In the alternative, plaintiff requests that defendants be enjoined from using the tract and structure for other than burial and religious purposes.

Defendants acknowledge their obligation to maintain the burial ground. They are willing to shift the responsibility for the burial ground's maintenance to the township supervisors, but submit that plaintiff is otherwise without right to restrict their use of the tract.

## STATEMENT OF THE ISSUES

1. Does plaintiff have standing to restrict defendants' use of the tract?

2. Is plaintiff's evidence of the burial ground's location on defendants' tract both admissible and sufficient to establish that the burial ground occupies an area beneath the structure?

3. Does defendants' duty to maintain the burial ground include a duty to hold it open to future burials or a duty to use the structure for purposes not inconsistent with the burial ground's integrity?

4. May defendants shift the responsibility to maintain the burial ground to the township supervisors? . . .

## DISCUSSION

It is probable that few disputes are marked by sentiments so strong, or principles so curious as those which pervade cases like the present. Because the law regards a burial place as a "hallowed ground—not subject to the laws of ordinary property, nor liable to be devoted to common uses" (Brown v. Lutheran Church, 23 Pa. 495, 500 (1854), precedents for burial ground disputes are, of necessity, consistent in only one respect: the result in each rests upon an equitable adjustment of the public's interest in the proper maintenance of a burial ground, a landowner's interest in the unimpeded use of his land, and a relative's interest in the honorable preservation of his ancestors' graves. E.g., First Trinity Evangelical Lutheran Church Appeal, 216 Pa. Superior Ct. 379, 268A. 2d 219 (1970).

By this standard, the chancellor is led to the following determinations: (1) defendants should be required to maintain the burial ground as it presently occupies their tract; (2) the burial ground should be closed to future burials; and (3) defendants should be permitted to use the structure on their tract for family purposes.

Admittedly, the analysis which leads to the chancellor's determinations is winding and difficult. It has required the chancellor to consider a diversity of issues, including plaintiff's standing, the burial ground's location, defendants' duty to maintain the burial ground, and defendants' ability to shift that duty to the Supervisors of Upper Mifflin Township. In the order stated, the issues are treated below.

## A. *Plaintiff's Standing.*

Plaintiff's right to restrict defendants' use of their tract apparently flows from a two-fold source: the restrictive covenants which obligated defendants' predecessors in title to use the tract and structure as a burial ground and church, and plaintiff's kinship to those interred in the burial ground. As to the former, it suffices to note that the restrictive covenants have not been shown to have been intended to benefit plaintiff's land. In the absence of such proof, plaintiff may not enforce the covenants against defendants: J.C. Grille, Inc. Liquor License Case, 181 Pa. Superior Ct. 456, 124A. 2d 659 (1956); Restatement, Property, §541.

As to the latter, it is not open to dispute that plaintiff may insist upon the reasonable preservation of his ancestors' burial ground: Appeal of Gumbert, 110 Pa. 496, 1 Atl. 437 (1885). See, St. Peter's Evangelical Lutheran Church v. Kleinfelter, 30 Dauph. Co. 404 (1927); exceptions dismissed, 31 Dauph. Co. 143 (1928); modified, 96 Pa. Superior Ct. 146 (1929). In short, "his relationship gives him the right to protect the [graves] from unlawful and unwarranted desecration. (citations omitted)": Brnilovich v. St. George Independent Serbian Orthodox Church of Pittsburgh, 326 Pa. 218, 223, 191 Atl. 584 (1937).

## B. *The Area Occupied by the Burial Ground.*

Plaintiff's right to insist that the burial ground be preserved begs the question of the burial ground's location. Plaintiff contends that the burial ground runs beneath the structure on defendants' tract, so that defendants are obligated to use the structure, as it has been used in the past, for religious purposes in deference to preservation of the burial ground's integrity.

The position asserted is founded upon various family conversations in which the burial ground's location was discussed and to which plaintiff and Gayle Shaver testified at trial. Should the testimony be found to be both admissible and of sufficient weight, plaintiff's position would be substantially unassailable. See Craig v. First Presbyterian Church of Pittsburgh, 88 Pa. 42 (1879), holding that a structure's use as a church school would encroach upon the burial ground beneath the structure.

Defendants have, however, objected to the testimony's admissibility and weight, stating that not one "Pennsylvania case . . . extends the (pedigree) exception to the hearsay rule to include statements made by deceased persons as to the identity and location of graves." The chancellor notes that the scarcity of authority to which defendants point is virtually universal. Nonetheless, the liberal interpretation customarily given to the "pedigree" rule in this Commonwealth (Simon v. New York Life Ins. Co., 70 Pa. Superior Ct. 408, 411 (1918), is reason enough for admitting the testimony to which objection has been taken.

"The term pedigree includes not only descent and relationship, but also the facts of birth, marriage and death.": American Life Ins. & Trust Co. v. Rosenagle, 77 Pa. 507, 516 (1875). In the case cited, the court ruled that testimony of family conversations in which the place of a relative's death was discussed, was properly admitted under the pedigree rule. Id. The Rosenagle holding is consistent with the broad interpretation of the pedigree rule urged by the text writers, e.g., 5 Wigmore, Evidence, (3d ed., 1940), §§1501, 1502. It is also, in the chancellor's view, of sufficient latitude to justify

allowance of the testimony here disputed. But see Jackson v. Etz, 5 Cow. N.Y. 314 (1826) (similar testimony disallowed as hearsay in escheat proceedings).

Given the admissibility of plaintiff's evidence, it remains for the chancellor to assess that evidence's weight. Research has revealed only one case (Carpenter v. Borough of Yeadon, 158 Fed. 766 (3d Cir., 1908), in which the point was considered even indirectly.

There, Carpenter was refused a burial permit under an ordinance which allowed burials only in grounds then used as a cemetery. Carpenter challenged the refusal with evidence similar to that adduced here. The court upheld the borough's refusal to issue the permit, apparently on the basis of other evidence which indicated that the alleged burial ground had been, for many years, subject to a lease for farming: 158 Fed. at 768.

In the present case, there is only the testimony of plaintiff and Gayle Shaver to support a finding that the burial ground runs beneath the structure on defendants' land. Against this testimony, the chancellor must weigh other evidence which establishes: (1) that the graves which are allegedly beneath the structure have not been memoralized in any fashion (finding of fact no. 9); (2) that the structure has fallen into a state of disrepair (finding of fact no. 8); (3) that plaintiff has made no effort to maintain the structure, even though he has attempted to remedy the burial ground's neglect (finding of fact no. 7); and, finally, (4) that land which plaintiff alleges was part of the burial ground beneath the structure is now occupied by an oil tank and traveled by automobiles (finding of fact no. 5). On these facts, and on the holding of Car-

penter, the chancellor must conclude that the burial ground's limits are defined by the area which is presently marked by gravestones, to wit, that area which begins at a point approximately 30 feet from the structure's eastern wall and extends to the eastern boundary of defendant's tract.

## C. *Defendants' Duty to Maintain the Burial Ground.*

Plaintiff's right to insist upon the burial ground's maintenance is but a corollary to defendants' duty to maintain the burial ground. Stated otherwise, plaintiff's right and defendants' duty are derivatives of the long-standing rule that once land has been dedicated for, and used as, a burial ground, it may be conveyed: McDonald v. Monongahela Cemetery Co., 226 Pa. 77, 75 Atl. 38 (1909) (cf., Mt. Calvary Methodist Protestant Church Trustees, 272 Pa. 453, 116 Atl. 319 (1922)), but not, in the absence of statute, for variant purposes. See Sapper v. Mathers, 286 Pa. 364, 133 Atl. 565 (1926). Hence, when defendants acquired their tract, they were deemed, by their acquisition, to have assumed a continuing obligation, enforceable by plaintiff, to care for the burial ground which occupies a portion of the tract.

The duty of maintenance with which defendants are saddled lends itself, at best, to definitions which are elusive and imprecise. Minimally, it is plain that defendants may not remove monuments or devote a portion of the burial ground to commercial use: St. Peter's Evangelical Lutheran Church v. Kleinfelter, supra.

Yet, it cannot be said that defendants' duty requires them to hold the burial ground open to future burials. Nothing in the record establishes that plaintiff, or any other person, is possessed of a right,

recognized at law, to be buried in defendants' tract: Brnilovich v. St. George Independent Serbian Orthodox Church of Pittsburgh, supra. at 221. Moreover, as defendants assert, the total absence of records marking the location of individual graves, and the occasional removal of some gravestones by defendants' predecessors in title, combine to render future burials an impractical and hazardous alternative.

Defendants' duty of maintenance thus exceeds a duty to avoid flagrant desecration, but falls short of a duty to conduct future burials. Ranging between these parameters is the duty to preserve the physical condition and solemn dignity which are reasonably appropriate to a burial ground's use. It is this duty which the chancellor believes defendants must discharge.

So defined, the duty extends not only to mowing grass and similar menial chores. It reaches as well defendants' use of the structure which adjoins the burial ground. Specifically, should defendants devote the structure to a use which objectionably interferes with plaintiff's, or other persons' lawful interest in the burial ground, the chancellor would, in reason and conscience, be required to intervene with his equitable powers. See Rorer's Estate, 3 D. & C. 41 (Phila. Co., 1923); affirmed per curiam, 279 Pa. 313, 123 Atl. 781 (1924) (sale of land adjoining burial ground enjoined on evidence that land was to be used for residential development).

The chancellor concludes however, that defendants' plans to use the structure for "family purposes" (finding of fact no. 11), will not objectionably interfere with the burial ground's use. In light of the burial ground's rural setting, and the structure's prior neglect, it is evident that the structure's

restoration and use by defendants' family will enhance, rather than derogate from the burial ground's integrity. See Davis v. Rumford, 43 Del. Co. 355 (1956).

D. *The Petition to Order the Township Supervisors to Care for the Burial Ground.*

While defendants acknowledge their responsibility to care for the burial ground, they are quite willing to shift that responsibility to the supervisors of Upper Mifflin Township under the provisions of section 702 of the Second Class Township Code, supra, 53 PS §65728. The duty is no so lightly discarded.

Under section 702, the court is authorized to require township supervisors to care for neglected or abandoned burial grounds. Significantly, the grant of authority is couched in permissive, rather than mandatory language. It is clear that the powers so conferred are to be exercised with sound and judicious discretion.

Such was the construction adopted in In re Limestone Cemetery, 24 D. & C. 2d 281 (Warren Co., 1960), where it was held that a burial ground would not be transferred to township supervisors until it was shown that its present owner was unable to maintain it. The result of In re Limestone Cemetery, supra, accords with the view taken in other similar contexts (e.g., In re Petition of Chester Monthly Meeting of Friends, 56 D. & C. 231 (Chest. Co., 1946)), and must prevail here. The petition to require the supervisors of Upper Mifflin Township to maintain the burial ground is, therefore, denied.

## CONCLUSIONS OF LAW

1. Equity has jurisdiction of the parties to, and the subject of, this action.

2. Where a restrictive covenant has not been shown to have been intended to benefit a claimant's land, the claimant is without right to enforce the covenant.

3. A relative has standing to insist that his ancestors' burial ground be preserved.

4. The pedigree exception to the hearsay rule allows for the introduction into evidence of statements made by deceased persons as to the location of such persons' ancestors' graves.

5. Plaintiff's evidence is insufficient to establish that the burial ground on defendants' tract extends beyond the area which is recognizable as a burial ground.

6. Defendants have a duty to maintain the burial ground on their tract in a reasonable manner, as defined herein.

7. Defendants are not required to hold the burial ground open to future burials.

8. Defendants are required to use the structure which adjoins the burial ground for purposes which do not objectionably interfere with the burial ground's use.

9. In the absence of proof that a landowner is unable to maintain a burial ground, township supervisors will not be ordered to discharge the landowner's duty to maintain the burial ground.

### DECREE NISI

And now, May 23, 1975, it be and is hereby ordered, adjudged and decreed that:

1. Defendants shall, to the extent provided herein, maintain as a burial ground that portion of their tract which begins at a point approximately 30 feet from the eastern wall of the structure on their tract, and runs to the eastern boundary of their tract;

2. The burial ground shall be closed to future burials; and

3. Defendants shall not use the structure on their tract for purposes which objectionably interfere with the burial ground's use.

The prothonotary of Cumberland County is directed to file this adjudication, enter the within decree nisi, give notice to the parties or their counsel of record as provided by the rules of equity practice in Pennsylvania, and, unless exceptions are filed to the decree within 20 days after said notice, the decree shall be entered as a final decree by the prothonotary.