## Appeal of Gumbert, *et al.*

1. A grant of land to church societies, for the use and purpose of a church and churchyard and a burying place, is a grant for that special purpose, and when the purpose fails the land reverts to the donor or his heirs.

2. Where such societies have dissolved and the church has been abandoned, the place may be still used as a burial ground by those who have relatives buried there.

3. Such parties have sufficient interest in the trust to clothe them with a right to see that the same is preserved. Hence upon their petition, the court will set aside a sale of such property, made under an order of court, to an incorporated society formed for the purpose of continuing the use of the ground as a burial ground, especially when the interest of the parties who petitioned for such sale, does not appear upon the record.

October 9th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from a decree of the Court of Common Pleas of *Westmoreland county :* Of October and November Term 1885, No. 175.

This was, in the court below, a petition by John Gumbert, *et al.,* to set aside and rescind a decree of said court ordering the sale of " The Old Brick Church," situate in the township of Allegheny.

Upon this petition a rule was granted upon Jacob Kepple, the trustee who made the sale, and upon Daniel Kepple *et al.,* the petitioners for the said sale, and also upon the Pleasant Hill Cemetery Association, the purchaser of said old brick church and grounds.

The respondents filed an answer and the matter was referred to John Armstrong, Esq., as Examiner and Master, who found the material facts to be as follows :

1. That Daniel Frantz, of Washington township, Westmoreland county, and State of Pennsylvania, by deed dated the 4th July, A. D. 1817, and recorded 21st May, A. D. 1821, in Deed Book No. 14, page 329, for and in consideration of $2, granted, sold, released and conveyed unto the Presbyterian and Lutheran Societies, a certain piece of land in Washington township aforesaid, containing " one acre, three roods and twenty perches. To have and to hold said piece of land for the only use and purpose of a church and churchyard and burying place, and for supplies of the gospel, against me, the said Daniel Frantz, my heirs and assigns forever, except the rights of privileges above mentioned, whereto said piece of land is to be appropriated only."

2. That sometime between the years 1818 and 1820, the building of a brick church was commenced on said piece of land, chiefly by the Reformed Presbyterians, which was afterwards finished by them and the Lutherans.

3. That about the time the building of the brick church was commenced an enmity sprang up between Daniel Frantz, who was a Presbyterian, and a Mr. Klingensmith, who was a Lutheran, growing out of a law suit, which was tried in Greensburg, which resulted in the building of a log church by Klingensmith about a mile from the brick church.

4. That the Lutherans used the log church until it became unfit to worship in, and then went up to the brick church and used or occupied it one half of the time ; the Presbyterians having used the brick church exclusively up to the time the Lutherans abandoned the log church.

5. That, prior to the year 1880, both the brick and log churches had become unfit to worship in, and these societies—Presbyterian and Lutheran—had long prior to that time ceased to worship there, most of the members of both congregations

14 OUTERBRIDGE—32

having, in the meantime, become members of churches else-
where.   In short, these churches, as places of worship, had for
a long time been abandoned.

6. That, after the Reformed Presbyterians and Lutherans
had left these churches as a place of worship, a committee was
chosen, to serve for them for five years, by persons who had
friends or relatives buried in the graveyard at the "Old Brick
Church."   It was the duty of this committee to call meetings
annually to meet at the "Old Brick Church" for the purpose
of cleaning out the graveyard.

7. That pursuant to notices published in the Leechburg
churches, that there would be a meeting held at the "Old
Brick Church" on the 6th of August, 1880, for the purpose of
cleaning out the graveyard, and also to attend to other busi-
ness, a number of persons met at the place mentioned and
worked in the graveyard, and after the work was through there
they went into the "Old Brick Church" and organized a
meeting.   It was called to order by Peter Kline, president of
the committee, whose term of office expired that day.   The
chairman of the meeting stated the object of the meeting,
which was to make some arrangement for the future manage-
ment of the graveyard.

8. That at this meeting of 6th August, 1880, a petition for
the charter of the Pleasant Hill Cemetery Association was read
to the meeting and passed around among the persons present
for their signatures.   A number of those persons who have
signed the petition asking the court to annul the charter of
the Pleasant Hill Cemetery Association, were present at this
meeting and made no objections to the petition for a charter—
and some of them took part in the proceedings.

9. That in accordance with the prayer of said petition, the
Court of Common Pleas on the 1st of October, 1880, approved
of the charter of the said Pleasant Hill Cemetery Association,
and the same was recorded 15th April, 1881, in Corporation
Docket No. 1, page 407.

10. That after the two congregations abandoned the "Old
Brick Church" the graveyard there was considerably grown
up with bushes and briers, making it unpleasant for funerals
to pass in to the graves.   But since it has come into the pos-
session of the Pleasant Hill Cemetery Association, the grounds
in that respect have been improved.

11. That the money realized from the sales of the log and
brick churches was paid into the treasury of the Pleasant Hill
Cemetery Association, and a portion of it applied to the pur-
chase of real estate, for the use of the association, and also for
the improvement of the cemetery grounds.

12. That the prices of the lots in the Pleasant Hill Cemetery

range, according to the size and location, from $5.00 up to $30.00. A place for a single grave can be bought for $2.00.

13. That the Cemetery Association have provided a place for burial for those who may be too poor to purchase a lot, or who may allege that they are too poor to buy a lot or to pay for a place to bury their dead.

14. That the funds to be realized from the sales of lots and single graves are to be applied to the improvement of the Cemetery grounds.

15. That many of those persons who have signed the petition to rescind the order or decree of the court, made at No. 178, November term, 1880, incorporating the Pleasant Hill Cemetery Association, have friends or relatives buried in the graveyard at the " Old Brick Church."

16. That a very large majority of those persons who have signed the above petition (Item 15) belong to other churches, and a number do not belong to any church.

17. That the directors of the cemetery required the burial fees to be paid before the interment took place, or the assumption of payment by some responsible person.

18. That the graveyard at the " Old Brick Church " had always been used as a free burial ground, from the time of the grant of the land from Daniel Frantz.

19. That there are gates to the cemetery which are kept locked—the directors say for the purpose of keeping out persons who have no business there—and there is a notice posted up in several places which reads as follows: " No Trespassing on These Grounds.".

The Master recommended a decree dismissing the petition.

Counsel for petitioners filed numerous exceptions to the Master's finding of facts, and also the following :

7. The Master erred in not reporting that the sale of the graveyard was made without any notice to the petitioners, who were interested in said graveyard, and in not finding who, if any of them, were interested and entitled to notice; and that, therefore, the proceedings were void.

8. The Master erred in not finding that the decree and all proceedings were void because the fund derived from the sale was ordered to be paid, and actually was paid to the Pleasant Hill Cemetery Association, which was in violation of the Act of 18th April, 1853, and its supplements.

The court, HUNTER, P. J., dismissed the exceptions, confirmed the report of the Master and entered a decree dismissing the petition at the cost of the petitioners.

Whereupon they took this appeal, assigning for error the action of the Court in dismissing the petition and in refusing to set aside the sale.

*James S. Moorhead* (*J. B. Head* with him), for appellants.—
The sale of a graveyard, occupied by graves and used and
kept up for the purpose of sepulture, was never contemplated
by and is not within the scope of the Act of 1853 : Brendle *v.*
Congregation, 9 Casey, 415 ; Burton's Appeal, 7 P. F. S., 219 ;
Brown *v.* Church, 495. Nor is any authority for the proceed-
ing given by the Act of March 24th, 1877, which provides for a
private sale of land held by religious societies to cemetery
associations, upon proper notice to all persons in interest, as
the Act expressly says, only " wherever the several courts of
this commonwealth are authorized by existing laws to decree
the sale and conveyance of real estate."

Again the 6th section of the Act of 1853 provides that " the
purchase money . . . . . shall, in all respects, be substituted
for the real estate sold . . . . . as regards the enjoyment and
ownership thereof . . . . . and shall be held for or applied to
the use and benefit of the same persons, and for the same
estate and interest, present, future, vested, contingent or
executory," etc.

Of the benefit of this provision the appellants are deprived.
The paltry sum for which their property was sold was put
beyond their grasp and turned into the coffers of their adver-
saries.

*W. H. Klingensmith* for appellees.—This grant being to the
Presbyterian and Lutheran societies, as it has not been shown
that the Presbyterians ever accepted the terms of the grant,
and therefore never had any interest in the premises, the grant
lapsed as to the Presbyterian society and all fell to the Lutheran
society. The Lutheran society having taken possession, and
being one of the beneficiaries under the Frantz deed, we think,
under the ruling in Landis's Appeal, 6 Out., 467, is entitled
to hold the premises as against the appellants.

If the appellants have no right whatever to the premises,
while even if it be true that the Lutherans do not have the
entire right, yet as between the Reformed and Lutherans, the
latter having some right as against no right on the part of the
former, the latter must prevail, or, in other words, as between
appellants and appellees, the latter have the better right.

The appellees and those they represent, have, no doubt, as
many friends and relatives buried there as have the appellants,
and it cannot be thought that they would take steps through
the cemetery association to prevent themselves from going
upon the grounds for proper purposes. Is the purpose of the
appellees, as set out in their charter and petition for the sale,
one to be commended or one to be condemned ? The purpose,
as set out here, we think, has had the approval of this court

in Brendle *v.* Congregation, 9 Casey, 415, and the cases there cited.

Mr. Justice GORDON delivered the opinion of the court October 26th, 1885.

On the 4th of July, 1817, Daniel Frantz, for the nominal consideration of two dollars, executed a deed to the Presbyterian and Lutheran societies, in which the purpose of the grant is stated as follows : " And the above mentioned societies to have and to hold said piece of land for the only use and purpose of a church and churchyard and burying place and for supplies of the gospel, against me, the said Daniel Frantz, my heirs and assigns forever, except the rights of privileges above mentioned, whereto said piece of land is appropriated only." It is very clear that the grant above recited, is for a special purpose only, and that when that purpose fails the land must revert to the heirs of Frantz.

As a place of worship it has been abandoned long ago, but it is still used as a place for the burial of the dead, so that the intended use still continues, and by this use a reversion is prevented. Again, as the grant was to the societies, in said deed named, the trust devolved upon them as long as they had an existence, but when they were dissolved, there was nothing left but a use to those who had, or have, relatives buried in the land, the subject of Frantz's gift. These, and the heirs of Frantz, are the only persons remaining who have any interest in the premises in dispute. Moreover, as was held in the case of Brendle *v.* The Reformed Congregation, 9 Ca., 415, a charity must be accepted on the terms on which it is given, or relinquished ; it cannot be altered by any new agreement between the donor and donee, or converted to any other purpose. If then, Frantz and the two societies could not, after the date of the grant, change the purpose therein set forth, we cannot see who else had the power to assume such right. There is no doubt but that persons interested might, as they seem to have done, have themselves and others incorporated in order the better to preserve the use, for in such case the corporation becomes a trustee, with power to administer the trust for the benefit of all interested. But who had the right to convey to this corporation the fee in these premises? The Frantz heirs? They might, indeed, convey their reversionary interest, but nothing more ; their deed could not defeat the trust. Neither could the beneficiaries so convey, for their right is only a use for a particular purpose, and not to sell or to alter in any way the character of the trust. How then could persons not having any right in the property clothe the court with the power to order a sale of the trust estate? Such power, under the

[Martz's Election.]

Act of 1853, can only be conferred by the petition " of any trustee, guardian or person interested." But the interest of the petitioners for the sale complained of nowhere appears. It is true, that in the petition is found the name of "Jacob Kepple," who is alleged to be the only surviving member of the council of the "Old Brick Church." But as there was no such council after the dissolution of the societies, I do not see how he could continue to be a member of a body that had ceased to exist, or even were it in existence, how he alone could assume to exercise the powers of that body. Now, we need hardly say, that in a transaction of this kind, the jurisdiction must affirmatively appear, and that by the record, for the court gets such power only from the petition of some " person interested," and without such petition the proceedings are *coram non judice*.

That the exceptants are parties in interest, and can, therefore, sustain the present bill, has been settled by the finding of the Master. He reports " That a number of the petitioners to rescind, either belonged to the congregations that worshiped at the ' Old Log ' and ' Old Brick ' churches, or have relatives buried in the graveyard who did worship there." Thus, undoubtedly, their interest is sufficient to clothe them with the right to see that the trust is preserved.

The decree of the Court of Common Pleas is now reversed and set aside at the costs of the appellees; and it is further ordered, that the previous order of sale be annulled, and the deed surrendered for cancellation.