GEORGE L. SHEPARD AND ANOTHER *vs.* WILLIAM E. SHEPARD AND OTHERS.

Hartford Dist., Oct. T., 1888. PARK, C. J., CARPENTER, PARDEE, LOOMIS and BEARDSLEY, Js.

A testatrix bequeathed "a sufficient sum to constitute" seven brothers and sisters named "life members of the American Bible Society and as a memorial of the deceased." Held to be a bequest to the Bible Society of a sufficient sum for the purpose stated, and that it was not affected by the death of any of the persons named before that of the testatrix nor by the refusal of others to accept the life-membership.

The testatrix gave three hundred dollars a year to *W*, "when he shall have attained a proper age and is fitted for college, to defray the expenses of

a collegiate and theological education." *W* studied four years in the Hartford High School and then entered the Massachusetts Institute of Technology, where he studied four years and graduated. Held that the bequest must be regarded as limited to his studying with a view to a theological course and to the ministry of the gospel, and that it could not be applied to supporting him in acquiring a mere scientific or business education.

Whether his being fitted to enter the Institute of Technology was equivalent to being "fitted for college:"—*Quære.*

Another bequest was as follows:—"Should any nephew or niece desire to study for the ministry, having fitted themselves, I give the sum of three hundred dollars to be paid annually to defray the expenses of a collegiate and theological education." *B*, who was a grand-niece, was fitting to enter Wellesley College and intended to obtain a collegiate and theological training with reference to being a missionary in the Western States. Held—

1. That grand-nephews and grand-nieces were included under the terms "nephews and nieces" as used by the testatrix.

2. That as the education of nieces as well as nephews for the ministry was contemplated by the testatrix, she must have intended by "collegiate and theological education," such academic and theological training as was available and suitable for preparing young women to be ministers of the gospel.

3. That *B* was entitled to the benefit of the bequest from the time she entered Wellesley College until her education should be completed.

A nephew had entered Wesleyan University since the death of the testatrix and was pursuing his studies there with the intention of entering the ministry. Held entitled to the three hundred dollars a year from the time he entered college till he had completed his studies or had abandoned his intention to pursue a theological course.

*P*, a niece, had completed her education in an institution for fitting young women for missionary work, a year before the will was executed and eight years before the death of the testatrix, and had ever since been engaged in missionary work. Held that the bequest contemplated only future, and not past cases of education for such work, and that she was not entitled to any thing under the bequest.

*L*, a brother, was given a life estate in the residue, "for his personal comfort, to be put in trust to my executors, who shall see that he is properly cared for." Held that, if necessary for *L's* personal comfort and proper care that a portion of the principal should be used, the executors were authorized to use it.

[Argued October 5th, 1888—decided January 4th, 1889.]

SUIT for the construction of the will of Sarah A. Waters, deceased; brought to the Superior Court in Hartford County, and reserved, upon facts found, for the advice of this court. The case is fully stated in the opinion.

*C. M. Joslyn*, for the plaintiffs.

*J. P. Andrews*, for Larned Shepard and his conservator.

*L. E. Stanton*, for William E. and Bertha M. Shepard.

*F. L. Hungerford*, for Lewis N. Crane.

*W. F. Henney*, for Ella J. and Richard Penrose, and for A. J. Ruliffson, trustee for Bethany Institute.

*S. E. Baldwin*, for American Board of Commissioners for Foreign Missions and for American Bible Society.

CARPENTER, J. This is a suit for the construction of a will. The questions arise under the seventh section of the will, the material parts of which are as follows:—

"I give and bequeath the amount necessary to constitute each of the given names life members of the American Bible Society, and as a memorial for the deceased." (Here follow the names of seven brothers and sisters, and ten nephews and nieces.) "I give and bequeath the amount necessary to constitute Willie E. Shepard, son of Edwin H. and Frances E. Shepard, a life member of the American Board of Commissioners for Foreign Missions; also when Willie E. Shepard * * * shall have attained a proper age, and is fitted for college, I give and bequeath to him the sum of three hundred dollars annually, to be paid to defray the expenses of a collegiate and theological education. * * * Should any nephew or niece desire to study for the ministry, and having fitted themselves for college, I give and bequeath the sum of three hundred dollars to be paid annually to defray the expenses of a collegiate and theological education. At the disposal of the above orders, I give and bequeath all the residue of my estate, real and personal, to my brother Larned Shepard, to have and to hold during his natural life, for his personal comfort, to be put in trust to my executors, brother George L. Shepard and Timothy G.

Jerome, who shall see that brother Larned Shepard is properly cared for."

By a codicil the legacy to the Bible Society to constitute nephews and nieces life members thereof, is revoked, and the amount given to the Rev. Mr. Ruliffson of New York city, in trust for Bethany Institute.

The Bible Society is entitled to the amount required to constitute each person named in the will a life member, except so far as revoked by the first codicil. A legacy to the Bible Society was intended—the amount to be determined by the amount required to constitute the several persons named life members. Neither the death of one or more of those persons, nor the refusal of others, will affect the amount of the legacy. The primary object was to benefit the Bible Society; to make her friends life members was incidental, and so far as deceased persons were concerned was a mere sentiment. There seems to be nothing in the will tending to show an intention to make the legacy or any portion of it dependent upon the acceptance of a life membership by the parties named.

For the same reasons the American Board is entitled to the sum required to constitute William E. Shepard a life member of that society.

Mr. Ruliffson, as trustee for Bethany Institute, is entitled to a sum equal to the amount required to constitute the nephews and nieces life members of the Bible Society.

The gift to William E. Shepard is in terms contingent— he " shall have attained a proper age," and shall be fitted for college. No question is made as to his age. Whether he fitted for college may be a question. His answer states that " in preparation for college he spent one term of six months in a grammar-school in Hartford, Conn.; then four years in the Hartford High School." We can hardly say, judicially, that that was equivalent to being fitted for college. There may or there may not be a distinction between the qualifications required for entering college, and those required for entering the Massachusetts Institute of Technology, where he graduated after a four years course. It is

legally possible that he was well qualified to enter that institution, and at the same time not qualified to enter any ordinary college. But not to press this point further, we are satisfied that this legacy was subject to a further contingency; it is given for a specific purpose—"to be paid to defray the expenses of a collegiate and theological education." The motive which prompted the gift was doubtless an expectation or hope that he might become a minister of the gospel, and was given as an inducement to that result. We discover no intention to aid him in acquiring a mere scientific or business education, such as he in fact acquired. The testatrix used the words "college" and "collegiate" in the same general sense. By being fitted for college we understand in this case is meant being prepared to take the academic course in an ordinary college, as that is the usual preparation for studying theology; and a collegiate education is such as is afforded by such a college. Such a course has not been taken.

But if this view is too technical, it must be conceded that a theological education has been wholly omitted. There has been no intent or attempt to acquire that. Both a collegiate and theological education are required. The will couples them together, not disjunctively, but by the word "and." We think it will defeat rather than effectuate the intention to give that word the sense of "or." As the testatrix has limited the use of this gift to one specific purpose, we cannot justify its use for another and different purpose. Our conclusion is that William E. Shepard takes nothing under this clause of the will.

As to Bertha M. Shepard. The case shows that she is twenty-one years of age and is pursuing studies at the school of Mr. Dwight Moody at Northfield, Mass. She is fitting for college and expects to enter Wellesley College in Massachusetts within two years from the present time. She hopes and intends to devote her life to the labors of a missionary in the western part of this country. She intends to obtain not only a collegiate, but theological training, and her instruction in Mr. Moody's school is in studies adapted

to qualify her to be a missionary, as well as those adapted to fit her to enter college.

The gift to her does not take effect until she is fitted for college. That Wellesley College is such an institution as the testatrix contemplated seems to be admitted. She speaks of nieces. As to them she has reference to colleges where young women may be educated; and by a "collegiate and theological education," she means such academic and theological training as is practicable and suitable to prepare them to be ministers of the gospel.

We are also of the opinion that the testatrix did not use the words "nephew" or "niece," in the ordinary and more accurate sense, as including only children of brothers and sisters, but inasmuch as she used those words in speaking of the children of nephews and nieces, she manifestly used them as including grand-nephews and grand-nieces as well.

We are of opinion that Bertha M. Shepard will be entitled to the legacy from the time she enters Wellesley College, and until her education is completed.

Lewis N. Crane desires to study for the ministry and has fitted himself for college. He in fact entered the Wesleyan University at Middletown in this state, in September, 1886, and has ever since pursued and is now pursuing his studies in that university, and it is his intention to study for the ministry. That brings him within the conditions of the will, and he is entitled to three hundred dollars per year, payable annually from the time he entered college until he completes his education, or until he abandons his intention to pursue a theological course.

Mrs. Ella J. Penrose is a niece of the testatrix. She was educated at the Bethany Institute, a school or college for educating women for missionary work, in 1875–6, and has ever since continued in the pursuit of her vocation as a missionary. She claims $300 per year for two years.

It will be noticed that she completed her education about a year before the will was executed, and about eight years before the testatrix died. The language of the will is— "Should any nephew or niece desire to study for the minis-

try, and having fitted themselves for college, I give," etc. That language looks to the future and not to the past. We cannot say that she desired to distribute her property equally among her nephews and nieces. On the contrary we think she intended to prefer those who should desire to prepare for the ministry—not for personal reasons but for the sake of the cause. Her heart was evidently in that work, and her object was to promote it by inducing her friends to engage in it. Her primary object was not legacies to relatives, but aid to Christian work. In that view she might well make a distinction between sending laborers into the field and compensating those already there. We are not at liberty, therefore, so to construe this language as to give it a retrospective operation.

Larned Shepard takes a life estate "for his personal comfort, to be put in trust to my executors, * * * who shall see that brother Larned Shepard is properly cared for." The question reserved is, whether he is entitled to the use of any portion of the principal. It may be that his "personal comfort" and "proper care," not being otherwise provided for, may require some portion of the principal. If so, the will by implication authorizes it to be used for that purpose.

The Superior Court is advised to render judgment accordingly.

In this opinion the other judges concurred.