(84 South. 846)

### TRUSTEES OF CUMBERLAND UNIVERSITY v. CALDWELL et al. (8 Div: 180.)

(Supreme Court of Alabama. June 9, 1919. On Application for Rehearing, Oct. 23, 1919. On Rehearing, Jan. 15, 1920.)

1. CHARITIES ⬤⟞34—DEVISE TO THEOLOGICAL DEPARTMENT NOT DEVISE TO UNIVERSITY AS ENTITY.

A devise of property to the theological department of a university *held* a devise to the department, and not to the college as an entity.

2. CHARITIES ⬤⟞35—DEVISE OF PROPERTY TO TRUSTEES OF A UNIVERSITY FOR A SPECIFIC DEPARTMENT HELD TO CREATE A TRUST.

A devise of property to the trustees of a university for the benefit of the theological department thereof *held* to create a trust, notwithstanding that the department specified was charitable in nature.

3. CHARITIES ⬤⟞34—ON EXTINCTION OF BENEFICIARY OF TRUST, LAW MAKES DISPOSITION WHICH TESTATOR FAILED TO MAKE.

On the extinction of beneficiary of a trust, committed to trustees for their specific execution thereof, and for no other purpose, unless that contingency is provided for by the testator, the law makes the disposition which the testator has failed to make.

4. CHARITIES ⬤⟞37—CY PRES DOCTRINE DOES NOT OBTAIN ON FAILURE OF SPECIFIC TRUST.

Failure of a specific trust created by a will cannot be averted or its fruits otherwise applied by recourse to the cy pres doctrine, which does not obtain.

5. CHARITIES ⬤⟞34 — DEPARTMENT OF UNIVERSITY HELD ABOLISHED AND DISCONTINUED AND DEVISE IN TRUST RENOUNCED.

A declaration of the board of trustees of a university to the effect that its theological department had been overthrown, and that it was discontinued, *held* an abolishment of such department, and a renunciation of a devise of property in trust for the benefit of such department.

6. CHARITIES ⬤⟞34 — ABOLISHMENT OF DEPARTMENT OF UNIVERSITY DEVISED PROPERTY LAPSED DEVISE.

Where a trust was created by a will for the benefit of a department of a university, and not for the benefit of the university as an entity, *held* that, on abolishment and discontinuance of such department, the trustees could not employ the property to the maintenance and conduct of some other department, notwithstanding that the charter granted the university by the state where it was located provided that upon discontinuance of a department trustees should have power to determine what application should be made of funds raised or given for its endowment.

7. APPEAL AND ERROR ⬤⟞1078(1)—CROSS-ASSIGNMENTS CONSIDERED, THOUGH CROSS-APPEAL NOT EXPRESSLY SUBMITTED WITH MAIN APPEAL.

Where, after a decision had been announced that cross-assignments could not be considered under Supreme Court practice rule 3 (Code 1907, p. 1507), because the record did not disclose the conditions to the right to cross-assign error, it was discovered that in the "certificate to record" the register recited the fact that a cross-appeal had been executed and security given, etc., the Supreme Court could consider such cross-assignments, although there was no express submission of the cross-appeals, along with the submission of the appeal in chief; question not being raised on the submission of the main appeal.

8. APPEAL AND ERROR ⬤⟞747(1)—CROSS-ASSIGNMENTS NOT CONSIDERED ON FAILURE TO EFFECT CROSS-APPEAL.

Supreme Court practice rule 3 (Code 1907, p. 1507) prevents consideration of cross-assignments, where appellee has not effected a cross-appeal and there is no joinder in the assignment and no indorsement on the transcript of consent to cross-assigning error.

### On Rehearing.

9. WILLS ⬤⟞866—TITLE TO REMAINDER DEVISED TO DEPARTMENT OF UNIVERSITY VESTED IN HEIRS OF TESTATOR ON ABOLISHMENT OF DEPARTMENT.

Under a will devising a remainder to the theological department of a university, *held* that, on discontinuance of the department during the life of the life tenant, there was in effect a renunciation of the devise, and the legal title passed at the time of such discontinuance to the heirs of the testator.

10. TRUSTS ⬤⟞135—TRUSTEE HAVING POWER OF CONTROL HAS LEGAL TITLE.

Whenever an instrument confers on the trustee any power in trust, or imposes any duty relating to the control or management of the trust or establishes any agency to be performed by the trustee as such, the legal title will vest in him in order to enable him to administer the trust.

11. WILLS ⬤⟞866—LIFE TENANT AS HEIR ENTITLED TO SHARE IN REMAINDER ON FAILURE OF REMAINDERMAN.

Where remainder was devised in trust, and the beneficiary failed during the lifetime of the life tenant, and the remainder reverted to the heirs of the testator, the life tenant, who was also an heir, was entitled to a share of such remainder and could dispose of the same by will.

Anderson, C. J., and McClellan and Gardner, JJ., dissenting in part.

Appeal from Circuit Court, Jackson County; W. W. Haralson, Judge.

Bill by Daisy Caldwell against the Trustees of Cumberland University, the Cumberland Presbyterian Church, and a number of the Caldwell heirs, to sell certain land for division. Decree for complainant, and respondent trustees appeal. Affirmed.

W. H. Norwood and John F. Proctor, both of Scottsboro, for appellant. The testatrix

---

⬤⟞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

was bound by the provisions in the charter of the college permitting the discontinuance of certain departments, and to apply the income going to that department to the benefit of the corporation. 20 Wend. 457. The provision to sell the lands and turn the money over to the trustees amounted to a money bequest. 98 Ala. 384, 11 South. 646; (C. C.) 36 Fed. 705, 2 L. R. A. 288. The bequest was to be construed, administered, and to take effect under the charter granted by the Legislature to the Cumberland University. 121 Ala. 64, 25 South. 694; 6 Cyc. 968; 40 Cyc. 1382-1385.

John B. Talley, of Temple, Tex., and Bouldin & Wimberly, of Scottsboro, for cross-complainant. The remainder was valid. 16 Cyc. 648; 19 Ala. 814; 38 Ala. 299; Willard's Eq. Jur. 580; 4 Dana, 366; 147 Ala. 457, 41 South. 515; 79 Ala. 423; 180 Ala. 183, 60 South. 293.

Lawrence E. Brown, of Scottsboro, for appellee. The form of the gift repels the idea that it was given for general use. 104 Ala. 327, 18 South. 394, 25 L. R. A. 360, 53 Am. St. Rep. 48; 180 Ala. 179, 60 South. 293 (dissenting opinion); 173 Ala. 181, 55 South. 492; 191 Ala. 150, 67 South. 699; 17 Fla. 304; 87 Va. 103, 12 S. E. 228, 11 L. R. A. 214; 2 Denio, 292, 540. The conversion into money was done for the purpose of division only, and for all other purposes the property was real estate. 136 Ala. 354, 34 South. 905, 96 Am. St. Rep. 26; 63 Ala. 443.

McCLELLAN, J. The chief question presented is the construction of the will of Hannah J. Caldwell, a resident of Alabama, who died in 1888, owning real estate, in which will, executed but a few months before her death, these were the important provisions:

"Second. I give, devise and bequeath to my said sister, Sarah Almena Caldwell, to have and to hold during the time of her natural life, all my real estate which I now own or may hereafter acquire and of which I may die seized and possessed.

"Third. I give, devise and bequeath the remainder in said real estate after the expiration of my said sisters life estate therein to the trustees and their successors, of Milton College, located at Fayetteville, Lincoln county, Tennessee, in trust to be invested and held by said trustees and their successors as an endowment fund for the benefit of the theological department of said college, subject, however, to the provisions hereinafter named. Said college is now under the control of the Columbia Synod of the Cumberland Presbyterian Church and an effort is being made by said synod to establish the said college as a permanent institution of learning under the care and management of said Columbia Synod. Now, if such effort shall fail and the said college shall pass from the control of the Cumberland Presbyterian Church, then, in either event, I give the remainder of said real estate after the life estate aforesaid, to the trustees and their successors forever of the Cumberland University located at Lebanon, Wilson county, Tennessee, to be by said trustees invested and held as a permanent Endowment for the benefit of the theological department of said University. I direct that my executor hereinafter named, within a reasonable time after the death of the said Sarah Almena Caldwell, shall cause said real estate to be valued by three disinterested persons to be appointed by the probate court of Jackson county, Alabama, and that he shall then proceed after legal notice to sell said lands at public outcry, according to law and execute titles to the purchaser, provided said lands shall sell at such sale for at least seventy-five per cent. of the value so put upon it, and the said executor shall pay over to the trustees entitled thereto as hereinbefore provided, the proceeds of such sale should said lands at such sale bring less than seventy-five per cent. of the value so put upon them, said executor shall declare no sale made and shall again offer the same for sale at such time as to him may seem best."

[1-4] There is no residuary clause in the will. Sarah Almena Caldwell enjoyed possession of the real estate and its use until her death on March 3, 1918. It appears from the terms of the quoted clauses of the will of Hannah J. Caldwell that Sarah Almena Caldwell was given a right of enjoyment during her life. In the third item of the will the testatrix manifested a purpose, in two instances in their order, to establish a succeeding interest in her real property; both efforts being inspired by motives of a religious character, directed to the advancement, in a particular way, of the ministry in the denomination to which she was attached. The first effort was to favor a theological department, the establishment of which was contemplated by the trustees of Milton College (later becoming Dick White College), which was, at that time, under the control of Columbia Synod of the Cumberland Presbyterian Church. The other effort, contingent upon the failure to establish a theological department in the Milton College under the control of the Cumberland Presbyterian church, was to favor the theological department of Cumberland University, at Lebanon, Tenn., an institution in which the trustees thereof maintained a theological department at and before the time the testatrix, Hannah J. Caldwell, died. The beneficiary of both testatrix's efforts, in the contingency stated, was the defined theological department of the mentioned institutions. It is manifest from the terms employed that the testatrix's object was to bestow her bounty upon a specific department, viz. a theological department, which, it is quite clear from this record, was a department specifically designed and so conducted as to give instruction to persons preparing themselves for the ministry, a department of the institution that,

through its curriculum and course of study, led to the attainment and reception of the degree appropriate to graduates into the ministry. See Shepard v. Shepard, 57 Conn. 24, 29, 17 Atl. 173; Church v. Bullock, 104 Tex. 1, 109 S. W. 115, 16 L. R. A. (N. S.) 860, 865.

It results, necessarily, that in neither instance did this testatrix intend to constitute the entities, Milton College or Cumberland University, devisees under her will. She made the trustees of Milton College, and, in an event, the trustees of Cumberland University, the agency to carry out her purpose, and, according to her design, committed the application of the subject of her gift to the specific object clearly prescribed in her will, viz. the theological department permanently to be established at Milton College under the conditions she prescribed, and, failing which, that already established at Cumberland University. Subject to the life estate assured her sister Sarah Almena, the method she chose to effect her intent was the creation of a trust; (a) the subject of the trust being the real property then owned by her; (b) the administrators thereof being, first and consistently with the primary beneficiary, the trustees of Milton College, and, secondly, upon a contingency particularly defined, the trustees of Cumberland University; and (c) the beneficiary, in either event, being the theological department of one or the other of the institutions named. The mere fact that the department specified was charitable in nature did not operate to make her expressed purpose and design any the less a trust. The effect of her will, in this particular, was to apply to the designated beneficiary the fruit of her devise. The designation of the trustees to administer it was not of the essence of her intent. They were but agencies, means to accomplish her intent.

In terms in her will she recognized the fact, subsequently confirmed, as the evidence conclusively shows, that the creation of the status upon which she hinged the designation of the theological department of Milton College was in a state of negotiation only, had not been established, but an effort was being made to establish it; and the devise itself, not simply its application or availability, was made to depend upon the subsequent creation of the designated beneficiary, viz. a theological department at Milton College, under the control of the Cumberland Presbyterian Church. As stated, this conditional provision failed because the beneficiary in contemplation, to be thereafter created, never came into existence. Accordingly the primary purpose of the testatrix in establishing the trust was aborted. On the failure, the extinction of a beneficiary of a trust, committed to trustees for their specific execution thereof and for no other purpose, unless that contingency is provided for by the testator, the law makes the disposition which the testator has failed to make. Abercrombie v. Abercrombie, 27 Ala. 489, 496, 497; 1 Jarman on Wills (6th Ed.) *527 et seq. This failure of the specific trust cannot be averted, or its fruits otherwise applied by recourse to the cy pres doctrine, which does not obtain in this state. Woodruff v. Hundley, 147 Ala. 287, 292, 39 South. 907.

[5] On June 9, 1909, the board of trustees of Cumberland University took this action with reference to the theological department of the institution:

"In view of the report of the dean of the theological faculty, and of the known conditions resulting from the strife going on and out of the courts, between the union and nonunion elements of the church, the existence of which is deeply deplored by this board, we are of the opinion that the overthrow of the theological school has been accomplished, and it is utterly useless for the board to further attempt to maintain it as a department of the University, and we now, with sorrow, declare that the department has failed, and it is hereby discontinued."

This department was thereby abolished— discontinued. The evidence otherwise concludes to the same effect. It has not been since re-established or revived. The fact that subsequently one instructor was assigned to teach some subjects or phrases of subjects that would be appropriate or were appropriate to the course of instruction given in a theological department did not operate to avoid the abolition, the discontinuance of the department by the board of trustees of Cumberland University, nor did that effect to revive the department after its abolition. The testatrix's clear design was to afford means to sustain a department of the character designated, not to supply funds to give instruction, through an agency that did not, in any reasonable sense, constitute a department devoted to the full preparation of persons for service as ministers qualified to proclaim that faith.

[6] It is insisted that, because the charter granted by the Legislature of the state of Tennessee provides:

"That the money and property constituting the general endowment fund, or that of any particular .department or professorship, shall never be diverted from the object for which it was given, or raised, to any other purpose, without the consent of the donor. But in the event that any such professorship or department should be discontinued or fail to exist, the trustees shall have the power to determine what other application shall be made of such funds raised or given for its endowment, for the interests of the institution"

—the board of trustees of Cumberland University may employ the property here in question, or the income therefrom, to the maintenance and conduct of some other de-

partment or agency than a theological department, germane to the institution's purpose and activity. Allied with this contention is the suggestion that the testatrix created the trust in contemplation of the above-recited charter power, and must be held to have implied an intent on the part of the testatrix to clothe the trustees with the authority to apply the substance or the income of the property to the maintenance of another department or activity of the institution. This proposition is unsound. The trust was not created for the benefit of Cumberland University as an entity, but, on the contrary, the will expressly designated a single, distinct department of the institution the cestui que trust to enjoy the benefit of her gift, making no provision whatever for another beneficiary to take the place of the theological department in the event that department ceased to exist. There is no indication or intimation that the testatrix intended to confer on the trustees the authority or discretion to substitute, under the quoted charter power, any other beneficiary than the one she designated. The will does not appropriate, by implication or otherwise, the liberty of application or substitution the charter power before reproduced purports to confer on the trustees of Cumberland University. The decision in Van Kleeck v. Reform Church, 20 Wend. (N. Y.) 457, cited on the brief for appellant, is without application to the inquiry here presented.

The direction to the executor, in the third item, ante, to sell the land after the death of Sarah Almena Caldwell, and according to a prescribed method, and pay the proceeds to the trustees designated, was incident to the trust thereby created, failing which, as before ruled, this authority and its particularly defined object ceased to be effective.

[7, 8] The original certificate filed in this court only recited an appeal on the part of the trustees of Cumberland University. Cross-assignments of error were made on the transcript by solicitors for the appellees, G. B. and E. H. Caldwell, and also by the solicitor for D. K. Caldwell as administrator of the estate of Hannah J. Caldwell, deceased. The original opinion, delivered on June 19, 1919, expressed the view—enforcing rule 3 of Supreme Court Practice (Code, p. 1507)—that these cross-assignments could not be considered; none of the conditions to the right to cross-assign error being disclosed by the record. Jones v. Peebles, 130 Ala. 290, 304, 30 South. 564. After the decision had been announced, it was discovered that in the "Certificate to Record" the register recited the fact that G. B. and E. H. Caldwell had perfected a cross-appeal, giving security for the cost of their cross-appeal. There was no express submission of the cross-appeal along with the submission of the appeal in chief; but, since the cross-appeal was in fact perfected by G. B. and E. H. Caldwell, and no question was raised on the submission of the main appeal, the court does not regard that irregularity as of sufficient consequence in this cause to deny the cross-appellants the benefit of the cross-assignments made for them. As to the cross-assignment attempted to be made by D. K. Caldwell, administrator, rule 3, Code, p. 1507 (Jones v. Peebles, supra), prevents its consideration; he not having perfected a cross-appeal, and there being no joinder in his assignment, and no indorsement on the transcript of consent to his cross-assigning errors.

The cross-appellants complain, in substance, that the court below erred in deciding—for the purpose of dividing the proceeds of this land, which was sold in accordance with the agreement of the parties to this cause—that the abolition of the theological department by the trustees of Cumberland University on June 9, 1909, fixed the point of time when the existence vel non of the beneficiary of the trust, viz. the theological department of Cumberland University, was determined, whereupon the then heirs at law of Hannah J. Caldwell, deceased, became entitled to the property. The result of this conclusion was to vest in Almena Caldwell, the then living life tenant, an additional undivided interest in the estate. This was error. The time when the existence vel non of the beneficiary of the validly created trust became indispensable to the effectuation of the testatrix's purpose was the time when the supervening use and enjoyment of the property by Almena Caldwell terminated upon her death in 1918. The availability and application of the substance of the trust was postponed until Almena Caldwell had enjoyed the use of the property while she lived. Between the probate of the will of Hannah J. Caldwell, deceased, and the death of Almena Caldwell in 1918, there was neither opportunity nor occasion to ascertain the existence of the beneficiary of the trust the will designated. It was only when the application of her bounty, through the trust she created, became a duty under the terms of her will, that it was necessary to ascertain whether the beneficiary designated existed. No other conclusion is, we think, reasonably possible, in view of the terms in which the testatrix set down her primary intent to constitute a theological department of Milton College the beneficiary of the trust she created, upon conditions, defined in her will, that were to be supplied by future action without express limitation upon the period in which the existence of these conditions should be ascertained.

It is manifest from the terms of the will that the design of the testatrix, with respect to Milton College, would have been satisfied if, after her death, Milton College had been permanently established, with a theological

department, and its control had been permanently committed to the Cumberland Presbyterian Church; she not having expressly prescribed the period within which these conditions should be afforded or ascertained. If this premise is correct, it is evident that the happening or nonhappening of events, prior to the death of Almena Caldwell, could not avail to furnish a basis for ascertaining the existence vel non of the beneficiary of the trust. The only limitation reasonably deducible from circumstances disclosed by the terms of the will and subsequent events is that the beneficiary should be ascertained at the point of time when the trust should have actually come to be administered and applied, viz. upon the death of Almena Caldwell. It results from this conclusion that the persons entitled to this property—the trust having failed for the want of a beneficiary—were the heirs at law of Hannah J. Caldwell, deceased, other than Almena Caldwell, living at the time Almena Caldwell died, viz. March 3, 1918.

The decree is only affected with reversible error in the respect that it (in effect) fixed an earlier date or occasion at which the ascertainment of the existence vel non of the beneficiary of the trust should be undertaken, thereby affirming the right of Almena Caldwell to dispose by will of an interest in the property to which she did not, in life, ever become entitled. To this extent only is the decree reversed. It is otherwise affirmed on assignments of error considered here. The court below will correct its decree in the particular indicated. The costs of appeal will be paid out of the fund in the custody of the court below.

Affirmed in part, reversed in part, and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.

### On Application for Rehearing.

SAYRE, J. There is no difference of opinion as to the proposition that the conditions upon which the trustees of Milton College were to take the property after the expiration of Almena Caldwell's life estate were never fulfilled. They never were, and all questions as to the alleged right of that institution may be laid out of the case, so far as concerns the settlement of the question of difference among the members of the court. The record shows that in 1909, nine years prior to the death of Almena, the board of trustees of Cumberland University at a regular meeting, a quorum being present, made the following declaration:

"In view of the report of the dean of the theological faculty, and of the known conditions resulting from the strife going on [in] and out of the courts, between the union and nonunion elements of the church, the existence of which is deeply deplored by the board, we are of the opinion that the overthrow of the theological school has been accomplished, and it is utterly useless for the board to further attempt to maintain it as a department of the University, and we now, with sorrow, declare that the department has failed, and it is hereby discontinued."

[9] At the time of the execution of the will of Hannah Jane Caldwell, and at the time of her death, Cumberland University was an agency of the Cumberland Presbyterian Church, engaged, among other things, in educating men for the ministry of that church. Hannah Jane Caldwell was a member of that church. When Almena died, and, it may be inferred, at the time of the declaration, supra, Cumberland University had passed into the possession of the Presbyterian Church of the United States of America by virtue of the union between the Presbyterian Church of the United States of America and the Cumberland Presbyterian Church. Shortly after the union referred to—or division, as it is spoken of in the answer filed by the Cumberland Church, for a part of that church persisted in the maintenance of a separate organization—the Northern Church, as the Presbyterian Church of the United States of America is frequently called, took possession of the theological department of Cumberland University, as the separate and undenied answer of the Cumberland Church discloses, and, after a futile attempt to operate it, abandoned it, and no longer maintains a theological department therein, nor did it profess, nor does it now teach, the distinctive doctrine of the Cumberland Church, which last-named church thereafter located a theological seminary at McKenzie, Tenn., for the education of its ministers, and that is now the only school which teaches the distinctive doctrines of the Cumberland Church as it existed at the time the will of Hannah Jane Caldwell was made. On the foregoing facts, even though it should be conceded, out of deference to an opinion expressed by one of the judges in consultation, that Hannah's will put the legal title to the estate in remainder after the lapse of the devise to Milton College in the trustees of Cumberland University pending Almena's life estate, the devise to said trustees lapsed when they solemnly declared, in strict accordance with the facts, that the overthrow of the theological school, meaning the theological department of Cumberland University, had been accomplished that said department had failed, and was thereby discontinued.

This was in effect a renunciation of the devise, and caused it to lapse as effectually as if the charter of the corporation had expired, and, the specific devise of the estate in remainder having lapsed, the legal title to that estate, on the concession stated, passed over to the heirs of testator, Hannah J. Cald-

well, and such in this state would have been the effect even though there had been a residuary clause. Johnson v. Holifield, 82 Ala. 123, 2 South. 753. Nor does any sufficient reason appear why this result of the lapse should be postponed to the death of Almena. The theological department of the Cumberland University, to which the estate in remainder was devised, was as dead as Milton College, and with no better chances of resurrection. Indeed, it might with reason be said that the lapse occurred at the time when the Northern Church took over the university, for upon the whole it appears that testator, Hannah J. Caldwell, intended that her bounty should not inure to the benefit of any theological department of any institution not under the control of the Cumberland Church; but, however that may be, we do not see how the formal resolution of the trustees can be accepted as anything less than a renunciation, and so as a lapse, of the devise in question. After that resolution, on the hypothesis that title vested originally in the trustees, there was, not a mere possibility of a reverter, but a reversion actually accomplished. The resolution to abandon the department was expressed in terms which left no room for doubt or reservation, and if a subsequent effort to revive a department of theology might have had any effect upon the status of right and title thus established—which we do not concede—as to that it seems enough to say that no such effort was made.

[10, 11] But upon the whole instrument it does not appear to have been the will of Hannah J. Caldwell that the legal title to the estate in remainder should vest in the trustees of Cumberland University pending the life estate of Almena. Rather it appears to have vested in the heirs of the testator, subject to be divested by a sale by the executor after testator's death. True, the will provided, in the event of a lapse of the devise for the benefit of Milton College, a gift of the "remainder of said real estate" to the trustees of the Cumberland University; but further provisions make it reasonably clear that testator intended, not a devise of the real estate itself, but of a fund to be raised out of said estate by the executor, who was directed to sell the same, execute title to the purchaser, and pay over the proceeds to the trustees, with another provision which lodged a measure of discretion in the executor, viz. in the event the property failed to bring 75 per cent. of its value as assessed according to a provision of the will, the executor named was authorized to offer the property for sale "at such time as to him may [might] seem best." If this created a personal trust in the executor named, as Judge BROWN is inclined to hold, then—

"the rule is that, wherever the instrument creating the trust confers upon the trustee any power in trust, or imposes any duty relating to the control or management of the trust estate, or establishes any agency to be performed by the trustee as such, the legal title will vest in him in order to enable him to administer the trust." 2 Beach on Trusts, § 395.

On that theory of the case, the legal title conferred upon the executor as trustee failed when the devise to Cumberland University lapsed, and thereupon vested in the heirs, or, in any event as to that, was thereafter held by the executor in trust for the heirs of testator. The writer holds that there being no devise to the executor and the power of sale being such as might be executed in the ordinary routine of administration, title did not vest by implication in the executor (Patton v. Crow, 26 Ala. 426; Tarver v. Haines, 55 Ala. 503), but remained all the while in the heirs at law of Hannah J. Caldwell, of whom Almena Caldwell was one, subject to be divested for the benefit of the theological department of the Cumberland University, and that, when the trust for that department failed, the remainder interest was subject to disposition by her. There being no equities as among the Caldwell parties, there being no reason why Almena or her devisees should not take a share of the property not disposed of by the will of Hannah J., as the event has shown, and the decree rendered in the trial court having adjudicated their claims in accordance with the views here expressed, a majority of this court holds that the decree should be affirmed in toto. We agree, of course, except as herein stated, in the opinion prepared by Judge McCLELLAN.

Application for rehearing granted, judgment of reversal set aside; and affirmed.

SOMERVILLE, THOMAS, and BROWN, JJ., concur.

McCLELLAN, J. (dissenting). The application for rehearing filed by Daisy Caldwell and others on July 5, 1919, was denied on October 23, 1919; the subjoined opinion, headed A, responding to the argument and authorities in support of the application as fully and particularly as a proper regard for reasonable brevity would allow. On November 5, 1919, the cause was restored to the rehearing docket by concurring justices, for further consideration. The argument presented on this second reconsideration of the soundness of the foregoing original opinion, delivered June 30, 1919, and in opposition to the correctness of the opinion in response to rehearing, delivered October 23, 1919, was the same, in substance and effect, though amplified, as that pressed against the soundness of the two previous opinions mentioned. Additional decisions and texts were cited in the last brief of the solicitor for Daisy Caldwell and others; but they, like those considered in the subjoined opinion, headed A, were of no particular value, though stating

correct general rules, because they involved instruments radically different in their terms from the instrument in which this testatrix, Hannah J. Caldwell, deceased, expressed her intent in the premises. The correctness of the original opinion was not questioned by the application for rehearing, except in the single aspect that it concluded that Almena Caldwell (under whose general devise to them of a remainder in her real property Daisy Caldwell and others alone claim), who died without descendants on March 3, 1918, had no interest in or title to the subject of the trust during her (Almena's) lifetime, and hence could dispose of no interest or title by will.

That the trust created by the third paragraph of Hannah Caldwell's will (quoted in the original opinion) failed for want of a beneficiary of the trust, is not doubted by any member of this court. So the only question presented, originally and on both reconsiderations was this: at what point of time was the failure vel non of the beneficiary to be finally determined? This to the end of ascertaining who were the heirs of Hannah J. Caldwell, deceased; the familiar rule being that upon the failure of a trust, for want of a beneficiary or otherwise, the subject thereof inures to the benefit of the heirs of the donor or of the testator, unless by provision in the instrument creating the trust or in the will a different disposition, through a residuary or other clause, is made. In this connection it is well to note that no provision whatsoever was made in the will of Hannah J. Caldwell, deceased, for a disposition of the corpus of this trust in the contingency that it failed.

Upon the reconsideration consequent upon the restoration of the cause to the rehearing docket on November 5, 1919, Justice SAYRE withdrew his concurrence in the overruling of the application for rehearing on October 23, 1919, and Justices SOMERVILLE, THOMAS, and BROWN concurring with Justice SAYRE, form the judgment of the court in accordance with the foregoing opinion of Justice SAYRE; Chief Justice ANDERSON, Justice GARDNER, and the writer adhering to the view that the original opinion and the subjoined opinion, headed A, were sound, and that the result thereby attained should be reapproved and sustained, leaving the subjoined opinion, headed A, to express the judgment of Chief Justice ANDERSON, Justice GARDNER and the writer in answer to the argument and authorities pressed for Daisy Caldwell and others, who claim alone under the will of Almena Caldwell, deceased. Since the opinion of the majority of the court proceeds on new considerations, the writer will set down his judgment in respect of such new considerations as have received the sanction of a majority of the court, disclosed in the foregoing

opinion of Justice SAYRE. These new considerations are, if soundly approved, of importance in the present cause, but of far greater importance in their subversive effect upon the rights of others that have been, up to this time, accepted as validly vested. The significance of this statement will later appear.

An analysis of the premises stated or the conclusions announced in the majority opinion discloses that the merger of the Cumberland Presbyterian Church into the Presbyterian Church of the United States, in 1906-07, is regarded as an effected surrender by the Cumberland Presbyterian Church of its doctrinal adherence and activity to an organization, viz. the Presbyterian Church of the United States, that did not teach or embrace "the distinctive doctrine of the Cumberland Church." The like idea is expressed, somewhat more definitely than theretofore therein, on page 11 (84 South. 851[1]) of the opinion of the majority. This conclusion is in immediate conflict with the doctrine of these decisions of this court: Harris v. Cosby, 173 Ala. 81, 55 South. 231; Morgan v. Gabard, 176 Ala. 568, 58 South. 902. In Harris v. Cosby, supra, it was deliberately affirmed, at page 90 of 173 Ala. (55 South. 233), that these organizations, the Cumberland Church and the Presbyterian Church of the United States, were in "general agreement in doctrine and government" and that "their differences were stated to be not fundamental." (Italics supplied.) It unmistakably appears otherwise from the opinion in Harris v. Cosby, supra, that the differences between these church organizations resulted from interpretation, not from an adherence to divergent principles. The Eighth Circuit Court of Appeals of the United States, in Duvall v. Synod, etc., 222 Fed. 669, 138 C. C. A. 217, pronounced as follows, in the light of the decisions in many cases involving this merger, including our deliverance in Harris v. Cosby, supra:

"On May 24, 1906, the representatives of the Presbyterian Church and the Cumberland branch thereof entered into an agreement by the terms of which it was substantially agreed that the two churches should be amalgamated, merged, and united into one church by the name of the Presbyterian Church in the United States of America, which should take, hold, succeed to, and possess all the legal, corporate, and property rights and powers of the separate churches, the same as if it were a continuance of each. * * *"

Since no reference is made in the majority opinion to the doctrine of Harris v. Cosby, supra, and to Morgan v. Gabard, supra, following Harris v. Cosby, it is not to be supposed that a departure from their doctrine was intended. If the indicated statements in the majority opinion are an announcement

---

[1] Ante. p. 594.

of the result of a rule of law in this jurisdiction—and doubtless it would not have been written in the opinion unless that was intended to be its effect—the consequences will be far-reaching, for, to illustrate, its application to the trust, to educate ministers primarily in the Cumberland Church, established in the Walton will as reproduced on page 643 of 127 Ala. (29 South. 99, 85 Am. St. Rep. 145), in Woodruff v. Hundley and upheld in Woodruff v. Hundley, 147 Ala. 287, 39 South. 907, would change the beneficiaries of that long-administered trust. Even such an intimation by this court should, it seems, take due account of the doctrine established in Harris v. Cosby, supra, and followed in Morgan v. Gabard, supra—the latter case involving and requiring equity's power to protect and preserve the subject of the trust from the use to which the merger of these church organizations had assigned it. In so far as the conclusion of the majority is predicated upon the attribution of an effect different from that accorded the merger in Harris v. Cosby and Morgan v. Gabard, it is, in my opinion, unsound, and affords no argument or ground for deciding that this trust was defeated by the merger fully described in Harris v. Cosby, supra. It could not be soundly affirmed that, if the theological department theretofore conducted at Cumberland University had been continued under and after the merger, it would not have been *the* beneficiary defined in the third paragraph of Hannah J. Caldwell's will. It was decided in the original opinion that the testatrix did not "intend to constitute the entities, Milton College or Cumberland University, devisees under her will"; that the trustees of these institutions were, in the contingencies stated in her will, simply employed by her as agents, trustees, to carry out her design. The correctness of this conclusion in construction of the will is not and has not been questioned, except by the entity, Cumberland University; and an acceptance of and regard for that conclusion will serve to render inapt and unimportant much comment or observation that can only confuse the judgment in deciding the single concrete question presented on the reconsideration of this cause.

2. It is held in the majority opinion that, "in effect," the action of the "trustees of Cumberland University" (the resolution is quoted in the original opinion) was a "renunciation of the devise and caused it to lapse as effectually as if the charter of the corporation had expired"; that it is not to be perceived "how the formal resolution of the trustees can be accepted as anything less than a renunciation, and so as a lapse, of the devise in question." There are reasons which appear to the writer to demonstrate the unsoundness of this pronouncement. As before particularly noted in the original

opinion, Cumberland University, the corporation, is not the alternative beneficiary of the trust the testatrix created in the third paragraph of her will. The testatrix, in the contingency defined quite naturally designated the trustees of Cumberland University as the administrative agents of her design; but the connection or power or authority of these trustees was referable alone to testatrix's will, and could not be at all attributed to their power or authority as trustees of Cumberland University. In respect of this trust they were trustees under the will of testatrix. The action of the trustees of Cumberland University (not these persons as trustees under the will of testatrix) in discontinuing the theological department was within their competency as trustees of the corporation, and is referable alone to their function as such corporate trustees. So in discontinuing—as the resolution quoted in the original opinion announces—the theological department of Cumberland University, they acted only as corporate authorities; and nothing in their resolution indicates the slightest purpose to even decline the office of trustee under the will of this testatrix, much less to undertake to renounce for the particular beneficiary designated in the will the trust created by this testatrix. The familiar rule was long ago established that, to quote Perry's work:

"Courts will not allow a clear trust to fail for want of a trustee; nor will they allow a trust to fail by reason of any act or omission of the trustee; therefore courts will not allow a trust to fail, or to be defeated by the refusal or neglect of the trustee to execute a power, if such power is so given that the donor intended it should be exercised" (Perry on trusts, vol. 1 [5th Ed.] § 248, p. 372)

—unless, of course the instrument creating the trust vests the trustee with a power to terminate the trust (2 Beach on Trusts, § 763). The like doctrine has been accepted in this court. Andrews v. Hobson, 23 Ala. 219; Randolph v. East B'ham Co., 104 Ala. 355, 364, 16 South. 126, 53 Am. St. Rep. 64. A trustee may, upon occasion, renounce the office of trustee, may decline to act; but only the cestui que trust, the beneficiary, can renounce the benefit of the trust. Skipwith v. Cunningham, 8 Leigh (Va.) 271, 31 Am. Dec. 642. There is nothing whatsoever in this record going to show any renunciation at any time by this beneficiary. It is therefore my opinion that the holding in the majority opinion that the trustees designated in this will either could or did renounce, or attempt to renounce, this trust, with the result that the trust was caused to "lapse"; that the trustees of Cumberland University could and did discontinue (because of a failure consequent upon "strife" between contending factions in the Cumberland Church [see resolution ante], not because, as seems to be supposed, of doctrinal

differences between the Cumberland Church and the Presbyterian Church into which the former was merged) the theological department conducted as a department of Cumberland University at the time of, and for 21 years after, the death of this testatrix. is patent; but that that action of the corporate authorities of Cumberland University was final and conclusive, and that those corporate authorities could not thereafter, during the lifetime of Almena Caldwell, have rescinded that action and revived the department, appears to me to be not at all doubtful for the reasons stated in the original opinion, ante, and in the subjoined opinion headed A. The time for ascertaining the existence of the alternative beneficiary was, under the clear effect of this trust purpose, upon the death of Almena Caldwell. It was only upon her (Almena's) death that the testatrix's bounty could be availed of, or could be applied, or the land be converted into the fund the testatrix made the subject of the trust. Until the death of Almena there could be no final determination or ascertainment of the failure of the trust for want of a beneficiary, the trust being otherwise perfectly valid. It is too plain for cavil that it was the proceeds of the sale of the land, not the land itself, that she intended to be the corpus of the trust. Hence the inquiry—where was the fee or title to the land after the death of Hannah J. Caldwell?—would be and is purely academic, since the point of time at which the trust failed for want of a beneficiary, not the title to the land, is *the* question in the cause.

No matter where the fee or other title was placed by the will during that period, the stated question would still persist, and would remain wholly unanswered by any finding that might be made as to the will-fixed repository of the fee ·or any other quality of estate. That the testatrix did not intend to submit to the personal discretion or choice of her executor whether the trust she had been at particular pains to create— even to the extent of providing for an alternative beneficiary, then a department. of Cumberland University, and ending her will without any residuary provision whatsoever —should avail or be available, or be defeated, cannot be reasonably extracted from the terms of this will. That the executor was required to sell the land was expressly provided; but he was vested with a proper discretion with respect to the time of resale, if at the first sale the land did not bring 75 per cent. of the value put upon it by the three persons to be named by the probate court, as stipulated in the will. If a beneficiary of this trust had all along existed, and the time had come to sell ("within a reasonable time after the death of Sarah Almena Caldwell," to quote the will), and the executor still survived, would any court have recognized any semblance of right in him to defeat the trust so positively provided? It does not seem possible under the terms of this will. 1 Perry on Trusts (5th Ed.) § 248, p. 372, quoted above herein.

On the last page of the majority opinion (84 South. 851) the writer expresses his individual judgment, not that of the concurring justices, to this effect: That the title remained in the heirs at law of testatrix, subject to be divested for the benefit of the theological department of Cumberland University. I am unable to see in this will the slightest manifestation of an intent to create a conditional estate in the land or a conditional trust, other than upon the contingency that Milton College should fail to meet the requirements prescribed in the will, to the end that the heirs at law took or held a base fee in remainder, or other contingent interest or estate, subject to be divested for the benefit of the beneficiary of the trust. The will is absolutely free from any language manifesting any such intent. There is no devise or other provision for any heir or next of kin, except Sarah Almena Caldwell. The creation, definition, and prescriptions with respect to the trust—the only other intent even intimated by the testatrix in her will—are absolute and unqualified except as to the alternative beneficiary, and as to the stated discretion reposed in the executor as to a resale in the event it did not bring 75 per cent. of the value put upon it by the persons named by the probate court. Every lawful, expressed intent of a testator, and none other, should be given effect in the courts.

The logical consequence is that, since the failure of the trust for want of a beneficiary could *only* be finally determined upon the death of Almena Caldwell, on March 3, 1918, Almena had, in her lifetime, no title to or interest in the property, and she, being dead at the earliest point of time failure vel non of the trust could be determined under the very terms of the will, could not have been an heir at law of Hannah J. Caldwell, deceased, with respect to the property in question.

In my opinion, the decree appealed from was erroneous in the particular stated in the original opinion and in subjoined opinion headed A.

Chief Justice ANDERSON concurs in the foregoing.

## A.

### On Rehearing.

McCLELLAN, J. (ANDERSON, C. J., and GARDNER, J., concurring). The application for rehearing brings into question the correctness of this conclusion in the foregoing opinion [the original opinion]:

"It results from this conclusion that the persons entitled to this property—the trust having failed for the want of a beneficiary—were the

heirs at law of Hannah J. Caldwell, deceased, other than Almena Caldwell, living at the time Almena Caldwell died, viz. March 3, 1918."

The criticism, in effect, of the decision of this court is that it excludes Almena Caldwell as an heir with respect to the property in question, and, in consequence, denies the competency of Almena Caldwell to dispose by will, which she executed, of her share, descending from the testatrix, of the subject of the trust that failed. The brief in support of the application for rehearing cites 1 Perry on Trusts (5th Ed.) §§ 159, 160; Gumbert's Appeal, 110 Pa. 496, 501, 1 Atl. 437; Bond v. Moore, 90 N. C. 239; 1 Rap. & L. Law Dict. 598, defining, according to the general acceptation, the term "heir." The abstract soundness of the doctrine of Perry's text, above cited, is not doubted. Indeed, the quoted conclusion recognizes the principle upon which the author proceeds, viz. that upon the failure of the trust the donor or the donor's heirs at law take the property, or, more accurately, that a resulting trust therein inures to their benefit. The correctness of the deliverance made by this court in the only particular the decision is now questioned cannot, however, be determined by recourse to so simple a formula; this for the reasons that were indicated in the original opinion.

The two inquiries necessary to be answered were these: (a) When, at what point of time, was the failure of the trust, created by the will of the testatrix, finally ascertainable; and (b) at what point of time was it determinable who were the heirs at law of the testatrix to whom the property (the subject of the failing trust) passed? From the terms of the will itself it appears that the testatrix provided for the future creation of the beneficiary of the trust through the action of the trustees of Milton College in establishing a permanent theological department therein, failing which the beneficiary should be a like department in Cumberland University, and that the testatrix fixed no period in which the department should be established in Milton College. The only limitation possible, in view of the provision for the

life of Almena Caldwell, must be found in the point of time when Almena's enjoyment of the property should cease by her death—an event that, itself, must have preceded the ascertainment of the failure of the trust for the want of a beneficiary—and thereby, inevitably, prevented Almena from being an heir at law of the testatrix with respect to the property testatrix impressed with the trust that could be afforded a beneficiary by action taken at an undefined time after testatrix's death, during the period Almena was enjoying the avails of the property. It is evident that the failure of the trust, as defined in this will, could not be referred to the death of the testatrix, since the trust was not invalid or illegal at that time, and since the creation of its primary beneficiary was to be provided by a future action without limitation as to time. The considerations stated led this court to the conclusion quoted; and the court remains satisfied with its correctness.

We have consulted the cases of Bond v. Moore, and Gumbert's Appeal, supra, cited on the application. Neither of these decisions is of any practical value in determining the question of the very different instrument presented for consideration by this appeal. In the former case the donor survived both the trustee, Huggins, and the donor's wife, and, besides, the deed establishing the trust made particular provision for the contingency that in fact later happened. In Gumbert's Appeal the questions decided arose out of the abandonment of property that had been conveyed for the use and purpose of a church, churchyard, and burying place. It was there held that, when the purpose failed, as it did, the land should revert to the heirs of the donor; but there was not in that instance, as there is in this, provisions governing the trust for the future creation of a beneficiary—a prospective provision that might have been employed to afford the beneficiary by action taken at any time during the life of Almena Caldwell. In that case there was no question with respect to the point of time when the failure of the trust should be determinable.